33806. ALLEN *v.* THE STATE.

Decided February 23, 1952.

*Wesley R. Asinof,* for plaintiff in error.
*Paul Webb, Solicitor-General, John I. Kelley, Solicitor, C. O. Murphy,* contra.

MacIntyre, P. J. Gladys Allen was convicted in the Criminal Court of Fulton County of participating in a lottery. She filed

her petition for certiorari in the Superior Court of Fulton County, which duly sanctioned the petition and issued the writ. The petition was based on the usual general grounds and one special ground, but as the trial court in its answer to the writ failed to certify the facts stated in the special ground, to which no exception was taken, counsel for the defendant in his brief in this court expressly abandoned the special ground. The superior court overruled the certiorari and the defendant excepted.

The State and counsel for the defendant entered into a detailed stipulation, which was introduced in evidence, as to the method and manner of operation of lotteries in Fulton County and further stipulated that such a lottery was in operation in the county on the date of the defendant's arrest.

The evidence introduced on the trial is quite brief and is set out here in its entirety. O. L. Adams, an officer of the City of Atlanta, testified: "I had occasion to arrest the defendant on trial, Gladys Allen, about March 7th, 1951, when Sgt. Mosely and myself were on Drummond Street at Newport and met a 1937 Dodge driven by John Henry Allen and stopped it. Sgt. Mosely went on Gladys' side and I searched the driver of the car, John Allen, and Sgt. Mosely asked Gladys to step out of the car which she did and this sack of original lottery tickets came from under her dress and we arrested them both, and in police court, Gladys Allen claimed the lottery tickets, and the judge fined her husband $53 for playing. That sack Exhibit 1 and contents is the sack that fell from under the defendant's dress. This sack was exposed when the defendant stepped from the car by it falling from her dress at the corner of Newport and Drummond Avenues, which intersection is in Atlanta, Fulton County, Georgia. The defendant did not make any statement about possession of these papers at the time as far as I know. I was on the other side of the car talking to her husband. (Cross-examination). The driver of the car was John Henry Allen, Gladys' husband—anyway he had the same name as her. There was no one else in the car. I searched John Henry Allen on the driver's side of the car and didn't actually see what happened when Mr. Mosely got Gladys to get out of the car. Both doors were open, but I did not actually see the sack fall from under her dress and she made no statement to me about it. When the

case was tried in police court, John Henry Allen pled guilty to the city case and received a fine there. Gladys stated it was hers and not his and you [counsel for the defendant] were the lawyer down there too. I say she made that statement there though you [counsel for the defendant] might say she didn't. You were present there and spoke to me about it beforehand. When she was in police court she was in the presence of her husband. And the court made the case against her and not her husband, binding her over. I don't recall whether a plea was entered for her or not at the time but do recall talking to the judge about it and I told him if one of them wanted to claim it we would let them and let them pay a city fine and she was bound over. I didn't search her when she got out of the car and Sgt. Mosely didn't either. We don't search women. When she got out of the car the sack fell out when I was on the other side of the car. I was the width of the 37 Dodge away, several feet, and we had the width of the car between us with both doors open."

George Mauldin testified for the State: "There was a lottery operating in Fulton County, Georgia, on March 7, 1951." Counsel for the defendant: "We admit that these are lottery tickets and pick-up sheets used in the operation of the lottery; that this is lottery paraphernalia and also that Mr. Mauldin is qualified as an expert in the lottery to testify to that; we admit the manner and method of operation of the lottery in Fulton County, but deny the defendant's participation in it." The Assistant Solicitor-General: "We tender in evidence this paper sack and contents—lottery tickets and pick-up sheets, and we are prepared to show that these papers represent such paraphernalia as a pick-up man in the lottery would have in his possession." Counsel for the defendant: "We could also stipulate that, while denying she had any part in this lottery." At this point the State rested its case.

The defendant made the following statement: "I am not guilty of having those numbers and they didn't belong to me. When my husband saw the officers coming, he had the numbers down under his seat and took them and said, 'Here come the mens,' and I said, 'what mens?" and he throwed the things in my lap and told me, 'You better own them too and say these is yours,'

and I said, 'I am not going to own them and get mixed up in it and have to leave my mother 87 years old,' and he says, 'If you don't you don't know what will be good for you,' and I was afraid of him and in police court I didn't say one word. The officer and the lawyer was the only ones said anything. I didn't say one word, but stood back off of the place there and didn't say one word. I works every day excepting my days off."

Counsel for the defendant, sworn as a witness for the defendant, testified: "Your Honor, at the police station I represented Gladys Allen and John Henry Allen, and I believe Mr. Adams is mistaken as to the fact of whether or not the defendant made any statement or admitted anything down there. I did waive preliminary hearing there consented to by myself, Mr. Adams, and Judge Callaway; that the husband would be given a city fine if the wife would waive preliminary hearing, which was done. Mr. Adams did use the expression to me out of the presence of the defendant that 'if she would own up to it and admit it was hers,' but she made absolutely no statement at the police station and the only statement made was by me waiving preliminary hearing and agreeing for the husband to get a city fine, and at the city police station he received a fine of $53."

█ The evidence here is in sharp conflict upon the question of whether the defendant admitted in the police court that the lottery tickets found in her possession belonged to her and not to her husband, who was arrested at the same time she was arrested and was present in the police court at the time of the alleged confession. It appears, however, without contradiction that the arresting officer stated in the police court that, if one of the two defendants in that court, the present defendant and her husband, would claim the lottery paraphernalia, they would be permitted to pay only a city fine. "When not made freely and voluntarily a confession is presumed to be legally false, and can not be the underlying basis of a conviction. The failure to object to such evidence does not give it probative value where it is shown, without dispute, that it was not freely and voluntarily made." *McKennon* v. *State*, 63 *Ga. App.* 466 (11 S. E. 2d, 416). Under the circumstances of this case, the confession, if made, was indisputably induced by the defendant's hope of benefit for herself and her husband. To be able to pay a city fine in lieu

of running the risk of a conviction and the loss of one's liberty is no inconsequential inducement to the American mind which holds liberty to be so dear. The confession in this case, if made, having been made involuntarily within the meaning of Code § 38-411, was without probative value and should not have been considered by the trial court, sitting without the intervention of a jury, on the trial of the case.

■ Excluding all consideration of the alleged confession, under the ruling made in the foregoing division of this opinion, we are still confronted with the question of whether the judgment finding the defendant guilty is authorized. When the evidence adduced upon the trial is considered in connection with the defendant's statement, it appears that the defendant and her husband were arrested while driving an automobile on the streets of Atlanta, and the defendant had lottery tickets in her possession at the time, which she claimed were thrown in her lap by her husband when he saw the arresting officers approaching their automobile. The State's witness testified on the subject of the defendant's possession of the lottery tickets that he searched the husband who was the driver of the car, and he was on the driver's side of the automobile; that another officer was on the opposite side of the car and asked the defendant to step out of the car, and that when she did so "this sack of lottery tickets came from under her dress." On cross-examination, however, the same witness testified: "I searched John Henry Allen on the driver's side of the car, and didn't actually see what happened when Mr. Mosely [the other officer] got Gladys [the defendant] to get out of the car. Both doors were open, but I did not actually see the sack fall from under her dress and she made no statement to me about it." At another point during the cross-examination, the same witness testified: "I didn't search her when she got out of the car and Sgt. Mosely didn't either. We don't search women. When she got out of the car the sack fell out when I was on the other side of the car. The defendant herself stated that the lottery tickets had at one time been in her possession, and although she stated that this possession was by virtue of her husband's having thrown them into her lap, the judge was authorized to believe that she had them in her lap but that her husband did not throw them there.

*Goldsmith* v. *State*, 54 *Ga. App.* 268 (187 S. E. 684). Thus, the judge obviously did not believe the defendant's explanation of her possession of the lottery tickets; or, in other words, her affirmative defense was not established to the reasonable satisfaction of the jury. Under the evidence the judge was authorized to find that the husband was driving the automobile with his wife sitting beside him with the lottery tickets in her lap, and that they were both participants in the lottery game; and this being a misdemeanor case, if either was the accessory of the other, they were both equally guilty as principals. *Hightower* v. *State*, 63 *Ga. App.* 265 (10 S. E. 2d, 765); *Stodghill* v. *State*, 72 *Ga. App.* 47 (32 S. E. 2d, 863); *Morrow* v. *State*, 62 *Ga. App.* 718 (9 S. E. 2d, 699). It follows that the evidence authorized the verdict, and the superior court did not err in overruling the petition for certiorari.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*