## 30258. LAWRENCE v. THE STATE.

Hall, Justice.

This is Lawrence's appeal from his convictions of armed robbery and aggravated assault growing out of the

April 11, 1974, $139 robbery of Johnny V.'s restaurant in Macon, Georgia, in the course of which an employee was shot in the neck without provocation and paralyzed. The gunman was not Lawrence, but one Solomon Hughes; however the gun used belonged to Lawrence's aunt and he admitted at trial that it was at the time of the robbery in his possession.

At Lawrence's trial, the state introduced evidence of the following statements made by him following his arrest after he had been informed of his rights and waived counsel: "I went to town and I saw Solomon and I told Solomon that I had a pistol and he said he wanted to get some money and I asked him how? I told him that I had never done anything like that before. Then we caught the bus to Emery Highway, and Short Street and Solomon asked to see the gun and I let him have the gun. Then we went to Johnny Vee's and Solomon asked me 'did I recone [sic] that place was hit [sic]'? I told him that I didn't know. He said he was going to hit that place and I wasn't going to take a chance, because I work in the place next door and all the people that work at Johnny Vee's very long would know me. He said he was going to do it anyway. I started on down the street and he went in by himself and I heard a shot. Then Solomon said run and I took off running. Then we went to my house and Solomon gave me $10.00 and he asked me for the pistol and I wouldn't give it to him, because it belongs to my aunt, Louise Jones."

Lawrence challenged the statement and urged at trial that it was in places incorrect. His testimony was that the gun was inadvertently left in his jacket on the bus and Hughes then obtained it; that he had some conversation with Hughes about the restaurant but did not plan or know of an intended robbery; that later Hughes came running up and told him to run, which he did, but not for guilty reasons; and that Hughes later returned the gun to him and gave him $10 which he assumed was repayment of an old debt.

The jury convicted Lawrence on both counts, and he was sentenced to fifteen years concurrently on each count, to serve 10.

1. On this appeal Lawrence's first four enumerations of error challenge the admissibility of the

waiver of counsel, the waiver of a commitment hearing, and his written and oral statements on grounds that they were not freely and voluntarily given and that he had asked to make a telephone call to obtain counsel and had not been permitted to do so. After a Jackson v. Denno (378 U. S. 368) type hearing outside the presence of the jury, the trial court admitted these items into evidence, and we affirm its ruling on each of these points.

At the hearing outside the jury's presence, a total of three detectives who participated in the arrest and interrogation of Lawrence testified. Detective Bishop testified that he saw Lawrence at the detectives' bureau and gave him full Miranda warnings; that Lawrence did not communicate to Bishop any desire to telephone anyone, that he was informed of the contents of the waivers of counsel and of the commitment hearing, and appeared to understand them; that he was offered no threats and no rewards, and signed all documents freely. Detective Page testified that he had been present when Lawrence was arrested at his home at about 5 a.m. and was advised of his rights after being allowed three or four minutes to become awake; that he heard Bishop give the warnings to Lawrence again at the bureau; and that he witnessed Lawrence's signing the documents but did not witness all that preceded the signing. He said no phone call was requested in his presence. Detective Hutcheson's testimony was to the same effect as Page's. The thrust of the detectives' testimony concerning the statements was that after signing waivers, Lawrence gave an oral statement to them and then at their request dictated it to a secretary who typed it. Lawrence's testimony was that he was told to read and sign papers but was advised of no rights, did not understand what he was signing, and signed his statement even though certain passages as typed were incorrect. On cross examination he admitted that he signed these papers without coercion and that no one made him promises or threats. But he said he told both a jailer and one of the detectives that he wanted an attorney, but was not allowed a phone call. Detective Bishop testified that prisoners are routinely allowed access to a telephone in the holding area where Lawrence was located prior to giving his statement unless the

investigating detective gives a countervailing order, and that he was the investigating detective and he gave no such order.

Lawrence testified that "No one threatened me but I really didn't know what they were going to do." Lawrence was a high school graduate at the time of the trial, and had maintained a B average.

When this evidence was put before the jury, Lawrence gave the following testimony on cross examination: "Q. Mr. Lawrence, did anybody make you sign this statement? A. Well, it is not a matter of, you know, of really saying they make me sign it but I never have done nothing like that before and I have heard that they done that [sic] and I didn't know the consequences and I didn't want to take a chance of being injured or nothing. Q. So you read it over and signed it? A. Yes. I read it over and signed it."

The trial court concluded that Lawrence had freely and voluntarily waived his rights to silence and an attorney and had chosen to give a statement. We must accept those factual determinations by the trial court unless those findings are shown to be clearly erroneous (*High v. State,* 233 Ga. 153, 154 (210 SE2d 673)), and they are not so shown. The standard the state was required to meet before the trial judge concerning the statement was to show it voluntary by a preponderance of the evidence considering the totality of the circumstances. Lego v. Twomey, 404 U. S. 477; *Thomas v. State,* 233 Ga. 237, 240 (210 SE2d 675). That standard was clearly met, and the first four enumerations are without merit.

2. Because the evidence was ample to establish the corpus delicti of armed robbery and aggravated assault, there is no merit to the contention that Lawrence's statement was not sufficiently corroborated. *Cooper v. State,* 226 Ga. 434 (175 SE2d 653); *McVeigh v. State,* 205 Ga. 326, 335 (53 SE2d 462); *Hilliard v. State,* 128 Ga. App. 157, 160 (195 SE2d 772).

3. There was no error in failing to charge on robbery by intimidation (Code Ann. § 26-1901) as a lesser included offense of armed robbery, when all the credible evidence showed completion of the greater offense. No request was made for the charge. "[F]ailure to charge on robbery by

intimidation was not error because the evidence did not *demand* a charge on that offense." *Holcomb v. State,* 230 Ga. 525, 527 (198 SE2d 179). (Emphasis supplied.)

4. Enumerations one through six being shown above to be without merit, and Enumeration 7 concerning the overruling of Lawrence's new trial motion raising no new points, the conviction will be affirmed.

*Judgment affirmed. All the Justices concur.*

SUBMITTED AUGUST 22, 1975 — DECIDED SEPTEMBER 16, 1975.

*Richard M. Nichols,* for appellant.

*Fred M. Hasty, District Attorney, Walker P. Johnson, Jr., Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.