A98A0171. GRIFFIN v. THE STATE.
A98A0197. HOLLEY v. THE STATE.
(496 SE2d 480)

ELDRIDGE, Judge.

Appellants Lisa Griffin and Talia Holley were charged separately in Stephens County State Court with theft by taking for alleg-

edly stealing merchandise from their employer, Cato's, a clothing retailer. On May 27, 1997, both defendants filed motions to suppress written statements given to the store's Loss Prevention Specialist, Mike Weaver. In separate orders dated June 13, 1997, the trial court refused to hold a pretrial hearing as to the voluntariness of the statements. Both defendants filed applications for discretionary appeals, which were granted by this Court. For the reasons set forth herein, we reverse the trial court's determination that the defendants were not entitled to a hearing on the voluntariness of their statements and remand with directions to the court to conduct such hearing and make an express determination as to the voluntariness and, therefore, admissibility of the statements.

The relevant facts show that both defendants were employed by Cato's. On January 14, 1997, Holley was taken to a small room and questioned for several hours by Weaver, who was a private employee of the store. During the questioning, Holley asserts that Weaver accused her of stealing from the store, screamed at her, and threw papers around the room. She claims that, when she insisted she was innocent, Weaver "threatened to have me locked up immediately unless I admitted to him that I had stolen from Cato's." As a result, she agreed to write out a confession "word for word as he said it."

Griffin was questioned under similar circumstances the next day; she also asserts that Weaver screamed at her and threw papers. She claims that Weaver threatened that she "would be raising [her] baby from a detention center"; she was denied the opportunity to call her parents; and she was not permitted to leave until she confessed to stealing. She contends that her written confession resulted from this questioning.

In their signed confessions, both defendants admitted that they had placed merchandise that had not been paid for in shopping bags for customers; they refunded money to customers for merchandise that they knew had been stolen previously; and they personally took merchandise from the store without paying for it.

Both defendants were charged with theft by taking in separate accusations. They separately filed motions to suppress the statements on May 27, 1997, asserting that the statements were involuntary and, therefore, inadmissible under OCGA § 24-3-50. A motions hearing was held, during which the defendants were not permitted to present evidence regarding the voluntariness of their statements to Weaver. Instead, the trial court limited testimony to that which addressed whether or not Weaver was acting as a private or public official at the time of the questioning; Weaver was the only witness. Following his testimony, the trial court established that Weaver had no official, public capacity and was, instead, a privately employed agent of the store. Based on this finding, the trial court, citing *Gaston*

*v. State*, 153 Ga. App. 538, 539 (265 SE2d 866) (1980), determined that the defendants were not entitled to a separate hearing on the voluntariness of the statements at any time. The trial court held that the statements were admissible and any question as to voluntariness must be resolved by the jury as going to the weight and credibility of the evidence. Both defendants appeal from this ruling.

The only issue before this Court is whether, under OCGA § 24-3-50, the defendants are entitled to a hearing and threshold determination by the trial court on the voluntariness of statements secured by private action before the evidence becomes admissible, or whether the issue of voluntariness is to be decided by the jury as a matter of weight and credibility.

OCGA § 24-3-50 reads as follows: "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." "A confession is an admission freely and voluntarily made by the accused whereby he acknowledges himself to be guilty of the offense charged, and discloses the circumstances of the act, and the share and participation he had in it. [Cit.]" *Pressley v. State*, 201 Ga. 267, 270 (39 SE2d 478) (1946); see also *Allen v. State*, 187 Ga. 178, 180-181 (200 SE 109) (1938); Imwinkelried et al., Courtroom Criminal Evidence 788 (2nd ed. 1993) (hereinafter "Imwinkelried"); Black's Law Dictionary 296-297 (6th ed. 1990).

There is no indication within this statute or in subsequent case law which limits the applicability of the statute to confessions made to state actors or agents. See generally *Mathis v. State*, 249 Ga. 454, 456-457 (291 SE2d 489) (1982); *Bonds v. State*, 232 Ga. 694, 695 (208 SE2d 561) (1974). Therefore, even when made to a witness who is not a state agent, as in this case, a confession must be voluntary to be admissible for any purpose under OCGA § 24-3-50. See *Allen v. State*, 85 Ga. App. 355, 358-359 (69 SE2d 638) (1952) (holding that an involuntary confession is without probative value); see also *Mincey v. Arizona*, 437 U. S. 385 (98 SC 2408, 57 LE2d 290) (1978); *Fain v. State*, 165 Ga. App. 188 (300 SE2d 197) (1983).

The conclusion that the statute applies equally to state and private action is further supported by a historical analysis of the origins of the voluntariness requirement of the statute, which can be traced to the development of the English doctrine on voluntary confessions and the common law. Wigmore recognized that the doctrine developed in several stages. 3 Wigmore, Evidence, p. 291, § 817 (Chadbourn rev. 1970) ("Wigmore"). Beginning in the 1500s, a confession was technically a guilty plea and was admissible, regardless of the circumstances under which it was acquired. Id. p. 292, § 818 (1). However, during the 17th and 18th centuries, the English courts began to recognize that confessions were often extracted by torture or

the promise of pardon, making such confessions inherently unreliable. Id. pp. 294-295, § 818 (3). "[C]onfessions vary in value according to the circumstances in which they are made. Some are clearly trustworthy; others are worthless." Id. p. 302, § 820b. "Among the circumstances that may be fatal to the trustworthiness of a testimonial narration is the fact that it is uttered under the direct and palpable pressure of an inducement to substitute something else than the truth. The statement thus presented may appear so likely to be the result of such an influence that it will be rejected as testimony." Id. p. 286, § 815. In *Warickshall's Case*, 1 Leach Cr.C. 298 (1783), the emerging voluntariness doctrine "received a full and clear expression, and confessions not entitled to credit because of the promises or the threats by which they had been obtained were declared inadmissible in evidence. From this time on, the history of the doctrine is merely a matter of the narrowness or broadness of the exclusionary rule." Wigmore, supra at p. 297, § 819.

As such, the primary justification of the English voluntariness doctrine on confessions was "preventing receipt of unreliable evidence." Imwinkelried, supra at p. 790, § 2304; see also McCormick, Evidence, pp. 231-232, § 111 (1954). Since confessions had been forced by the crown, church, nobility, and powerful, no distinction was made between the value of confessions resulting from official state action and those secured by private individuals.

During the 18th century, the common law voluntariness doctrine was transplanted to the American colonies and "was the rule in the United States during most of the 19th century, although presumably without the anticonfession bias common in England during the early 1800s."[1] Imwinkelried, supra at p. 791, § 2304. This doctrine applied to both private and official state action. Id. p. 791, § 2304, n. 16; see also id. p. 798, § 2305, n. 52.

The Georgia General Assembly first codified this common law doctrine as § 3716 of the original Code of 1863. As previously stated, during this period, coerced confessions were excluded in the United States because they were considered inherently unreliable as evidence, not because they violated some state or federal constitutional guarantee. Id. pp. 792-793, § 2304. In fact, the Georgia Constitutional Bill of Rights did not come into existence until the new Georgia Constitution was adopted in 1866. Ware, A Constitutional History of

---

[1] "In the middle of the 1800s . . . counsel were able to advance seriously the argument 'that the law assumes that a man may falsely accuse himself upon the slightest inducement.'" Wigmore, supra at p. 298, § 820a., quoting *R. v. Baldry*, 2 Den. C.C. 430 (1852). "This, then, was certainly one of the reasons why, in one way or another, on principle or without principle, many judges came to set themselves against the use of confessions, and to exclude them on pretexts which were in themselves trivial and irrational but in fact represented a fixed judicial sentiment." Wigmore, supra at p. 299, § 820a. (1).

Georgia, p. 122.

It was not until the middle of the 20th century that the United States Supreme Court looked to procedural fairness, based on federal constitutional due process guarantees, to protect individuals from oppressive state action and to exclude coerced confessions. Id. p. 793, § 2304; see, e.g., *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966); *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964); *Payne v. Arkansas*, 356 U. S. 560 (78 SC 844, 2 LE2d 975) (1958); *Fikes v. Alabama*, 352 U. S. 191 (77 SC 281, 1 LE2d 246) (1957). As a constitutional matter, it is now clear that a voluntariness hearing under *Jackson v. Denno*, supra, must be held when there is an assertion that the defendant has been subjected to coercive state action. Further, it is also clear that confessions which result from coercive interrogations conducted by private citizens are not subject to a constitutional due process analysis in determining whether or not to exclude the confession at trial. See *Colorado v. Connelly*, 479 U. S. 157 (107 SC 515, 93 LE2d 473) (1986); see also generally *Calhoun v. State*, 144 Ga. 679, 681 (87 SE 893) (1916) (regarding self-incrimination). In this case, the trial court correctly determined that Weaver had no official, public capacity; therefore, the defendants were not entitled to a *Jackson-Denno* hearing as a matter of constitutional law and procedure. Accordingly, no constitutional analysis is necessary in this case.

However, "[t]he states may, of course, employ standards more stringent than the due process requirements pronounced in the federal precedents, but standards less stringent are outlawed." Wigmore, supra at pp. 307-308, § 820d.; see also *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992); *State v. Estevez*, 232 Ga. 316, 317 (206 SE2d 475) (1974). If a state's statutory standard is more beneficial to the accused, such standard is binding on that state's courts. Imwinkelried, supra at p. 797, § 2305, n. 47; p. 918, § 2702. By enacting the original 1863 statute, recodified as OCGA § 24-3-50, the Georgia General Assembly deemed inadmissible *all* involuntary confessions, i.e., those that result from the hope of benefit or the fear of injury, not just confessions resulting from official state action.

In this case, however, the State cited to *Gaston v. State*, supra, and asserted that the defendants were not entitled to *any* hearing, at any time, on the issue of voluntariness solely because no state action was involved in securing the confessions and the constitutional standards did not apply to the private individual's actions. *Gaston v. State* involved a confession to a private individual, the victim. The defendant failed to present any evidence of coercion. As such, this Court decided that, absent state action, the defendant was not entitled to a voluntariness hearing because his *constitutional rights* were not violated. However, the defendant's rights under OCGA § 24-3-50 were

not raised by the defense or considered by this Court in *Gaston v. State*. Therefore, the trial court in this case erred in relying on *Gaston v. State* in refusing to conduct a hearing, pursuant to OCGA § 24-3-50, on the voluntariness of the defendants' confessions as to the threshold issue of the admissibility of the confessions. Under this statute, the voluntariness of the confessions is a legal determination that the trial court must make at some time prior to admission.

Further, although this Court recognizes that there is no *absolute* requirement that a voluntariness hearing be held outside the presence of the jury, it would be the better practice that it be done outside the presence of the jury as a matter of fairness and judicial economy.[2] See *Pinto v. Pierce*, 389 U. S. 31, 32 (88 SC 192, 19 LE2d 31) (1967); *Peinado v. State*, 223 Ga. App. 271, 272 (477 SE2d 408) (1996); *Schneider v. State*, 130 Ga. App. 3, 5-6 (202 SE2d 238) (1973); *Hilliard v. State*, 128 Ga. App. 157, 158 (195 SE2d 772) (1973). "The judge must use appropriate means to insulate the jury from inadmissible evidence while balancing the rights of the parties to present their cases, make their admissibility arguments, and preserve the record for appeal. Various methods are available to the trial judge to prevent the jury from hearing evidence that is inadmissible for any purpose[,]" including resolving issues in a pretrial conference, hearing motions in limine, or hearing arguments on objections during trial outside the presence of the jury. Leonard, The New Wigmore: A Treatise on Evidence p. 1:7, § 1.3.

Regardless of the procedural device employed by the court, both the State and the defendants must have the opportunity to put forth evidence regarding the circumstances surrounding the confession. *Cardell v. State*, 119 Ga. App. 848, 852-853 (168 SE2d 889) (1969). The State has the burden to prove that the confession was voluntary within the meaning of OCGA § 24-3-50 by a mere preponderance of the evidence.[3] See *Lawrence v. State*, 235 Ga. 216, 219 (219 SE2d 101) (1975); *Peinado v. State*, supra at 273; *Billings v. State*, 212 Ga.

---

[2] We recognize that, if admissibility arguments are held in the presence of the jury and a confession is deemed to be inadmissible based on its involuntary nature, it is not automatically reversible error. However, curative instructions would be necessary to prevent the jury from considering the inadmissible evidence in reaching their verdict. If these instructions prove to be inadequate upon subsequent review, it may be reversible error under the circumstances.

[3] This Court feels compelled to note that, even if the defendants' assertions regarding the circumstances leading to their confessions, as they presently appear in the record, were undisputed, they do not appear to rise to a "slightest hope of benefit or remotest fear of injury" that would exclude the confessions as involuntary under OCGA § 24-3-50. See *Cooper v. State*, 256 Ga. 234, 235 (347 SE2d 553) (1986); *Tyler v. State*, 247 Ga. 119, 122 (274 SE2d 549) (1981); *Anderson v. State*, 224 Ga. App. 608 (481 SE2d 595) (1997); *Mungin v. State*, 183 Ga. App. 290 (358 SE2d 673) (1987); *Sampson v. State*, 165 Ga. App. 833 (303 SE2d 77) (1983); see also OCGA § 24-3-51.

App. 125 (441 SE2d 262) (1994); *Jones v. State*, 174 Ga. App. 783 (331 SE2d 633) (1985). Upon consideration of the evidence, the trial court must make a threshold determination that the confession was voluntary and, therefore, admissible as a matter of law, and such express finding should appear in the record. See *Sims v. Georgia*, 385 U. S. 538 (87 SC 639, 17 LE2d 593) (1967); see also *Cofield v. State*, 247 Ga. 98 (274 SE2d 530) (1981); *Cardell v. State*, supra at 853. But, cf. *Eady v. State*, 182 Ga. App. 293, 298 (355 SE2d 778) (1987) (implicit in the court's denial of the motion to suppress was the determination that the confession was voluntary under OCGA § 24-3-50).

Only upon such determination of voluntariness may the evidence be submitted to the jury for its consideration. However, the defense retains the right to present testimony and cross-examine witnesses regarding the circumstances surrounding the voluntariness of the confession. See *Crane v. Kentucky*, 476 U. S. 683, 688-690 (106 SC 2142, 90 LE2d 636) (1986) (holding that the defendant had the right to present a complete defense and, therefore, was entitled to introduce testimony about the environment in which the confession was obtained, since this kind of evidence is often relevant to its reliability and probative weight, as well as "to the ultimate factual issue of the defendant's guilt or innocence"); *Smith v. State*, 263 Ga. 782, 784 (439 SE2d 483) (1994). After considering the evidence, the jury must decide what weight the evidence is to be afforded and may accept or reject the evidence based on such credibility determination. See OCGA § 24-9-80; *Sims v. Georgia*, supra at 544; *Cooper v. State*, 256 Ga. 234 (347 SE2d 553) (1986); see also Torcia, 4 Wharton's Criminal Evidence § 629, pp. 116-117 (14th ed. 1987).

This case is remanded to the trial court with directions to hold a hearing, make an express threshold determination of voluntariness under OCGA § 24-3-50 on the record, and, only upon finding that the statements were voluntary, admit the defendants' confessions.

*Judgments reversed and remanded with directions. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 23, 1998.

*Nina M. Svoren, Timothy P. Healy*, for appellants.
*James E. Cornwell, Jr., Solicitor*, for appellee.
*Thurbert E. Baker, Attorney General, Mary B. Westmoreland, Deputy Attorney General, Carol A. Callaway, Neal B. Childers, Senior Assistant Attorneys General,* amici curiae.