A00A1430. WILEY v. THE STATE.
(538 SE2d 483)

POPE, Presiding Judge.

Raymond Edward Wiley, Sr. was tried and convicted of aggravated child molestation. Here he appeals, raising three enumerations of error. Concluding that his arguments lack merit, we affirm.

Evidence at trial showed that Wiley molested a nine-year-old family member. The State also introduced evidence of a similar transaction in which Wiley had placed his hands inappropriately on the body of a 14-year-old family friend. Robbie Johnston, a detective with the Henry County Police Department, interviewed Wiley on the date the victim revealed the molestation. Johnston testified that in his interview with Wiley, the defendant admitted committing the molestation. A videotape of the interview in which Wiley admitted the crime was played for the jury.

1. In his first enumeration of error, Wiley argues that the trial court erred by allowing the admission of similar transaction testimony regarding an incident which occurred in 1990. Specifically, he argues that there was insufficient similarity between the offenses to allow the admission of the previous incident. At the hearing before trial regarding the prior incident, the court found that the State had made the three affirmative showings required by *Williams v. State*, 261 Ga. 640, 642 (2) (409 SE2d 649) (1991). We find no error in the court's admission of the evidence.

The rules regarding the use of similar transaction evidence are construed most liberally in cases involving sexual offenses. Moreover, a trial court's determination that similar transaction evidence is admissible will not be disturbed absent an abuse of discretion.

(Citations and punctuation omitted.) *Sweet v. State*, 237 Ga. App. 613, 615 (2) (516 SE2d 317) (1999). "Furthermore, the sexual molestation of young children, regardless of sex or type of act, is of sufficient similarity to make the evidence admissible." *Livery v. State*, 233 Ga. App. 332, 334 (1) (a) (503 SE2d 914) (1998). In this case, contrary to Wiley's arguments, the evidence showed that the previous act was sufficiently similar to allow its admission into evidence.

2. Secondly, Wiley claims that the court erred by allowing into evidence the videotaped statement he made to the police. He claims that the chain of events from the victim's revelation of the crime until his confession created a snowball effect, which resulted in his involuntary statement. This argument also lacks merit.

Evidence at the hearing regarding the admissibility of the statement established that Wiley gave the statement on the night the victim told her parents of the molestation. On that night, after hearing the victim's story, the victim's parents called Wiley and discussed the crimes with him. Wiley initially denied the allegations. Wiley then admitted that he had kissed the victim's belly button.

The victim's father then stated: "Ray you know, if you talk to us now, maybe we can work this out, if you tell us the truth now." Wiley still denied the crime, and the victim's father then called the police. After the police were called, Wiley turned to his wife and stated: "I did it."

The Spalding County police then came to the home and took Wiley to the Spalding County jail. Because Spalding County did not have jurisdiction, Henry County police officer Johnston retrieved Wiley from the Spalding County jail. Officer Johnston testified that Wiley "stated that he wanted to talk to me, that he wanted to come to police headquarters."

On the way to the Henry County jail, Wiley rode in the front seat of the police car with Johnston. Johnston testified that he "made absolutely certain" that Wiley knew that he was not in police custody and was not under arrest. Johnston recalled that he had returned Wiley's personal possessions to him and that Wiley was not handcuffed. Johnston offered to take Wiley to a pay phone and let him call whomever he needed to call; Johnston also told Wiley he could get out of the car and walk.

At the police station, Johnston stated that he told Wiley that he was not in police custody, but that Johnston would like to talk with Wiley about the allegations against him. Johnston read Wiley his *Miranda* rights, and Wiley then signed a waiver of those rights. *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Johnston then obtained the videotaped statement in which Wiley admitted committing the crimes.

> Whether a defendant waives his rights under *Miranda* and makes a voluntary and knowing statement depends on the totality of the circumstances. On appeal, the standard of review is whether the trial court was clearly erroneous in its factual findings on the admissibility of this statement.

(Citations and punctuation omitted.) *Pollard v. State*, 238 Ga. App. 253, 256 (4) (518 SE2d 463) (1999).

The record shows that Wiley was advised of his rights, that he understood those rights, and that he gave his statement freely and voluntarily without hope of benefit or fear of injury.[1] Thus, the trial court did not err in concluding that Wiley's statement was freely and voluntarily given after a knowing and intelligent waiver of his rights under *Miranda*. See generally *Davis v. State*, 271 Ga. 527 (2) (520 SE2d 218) (1999); *Pollard v. State*, 238 Ga. App. at 256. Wiley's argument that the entire sequence of events resulted in his involuntary statement to Johnston lacks merit.

3. Finally, Wiley argues that the court erred in allowing into evidence the confession which he made to the victim's parents. Citing *Griffin v. State*, 230 Ga. App. 318 (496 SE2d 480) (1998), Wiley contends that the statement was involuntary under OCGA § 24-3-50 because it was induced by the hope of benefit — specifically, the victim's parents' representation that they would not involve the police.

"The findings of a trial court as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal unless clearly erroneous." (Punctuation omitted.) *Morrow v. State*, 226 Ga. App. 833, 835 (2) (487 SE2d 669) (1997). As stated above, Wiley made the statement after the victim's father had stated that maybe they could "work this out." There was testimony that Wiley still denied the crime and the victim's father then called the police. After the police were called, Wiley turned to his wife and stated: "I did it." Although the victim's father did not recall stating that he would not call the police if Wiley told the truth, the victim's mother testified that the victim's father had made this statement.

In *Griffin v. State*, 230 Ga. App. 318, the defendants, who were employed by Cato's, a clothing retailer, had confessed to stealing merchandise from the store after being questioned for hours by the store's Loss Prevention Specialist. The defendants filed motions to suppress the written statements, and the trial court refused to hold a

---

[1] We note that the evidence indicates that Wiley was not in custody when he gave the statement. See *Sams v. State*, 239 Ga. App. 715 (521 SE2d 848) (1999). And, "[a] suspect is not entitled to warnings under *Miranda*, unless that suspect has been taken into police custody or has been deprived of freedom of action in another significant way." (Citation omitted.) Id. at 717.

pretrial hearing regarding the voluntariness of the statements. The question before the court was whether the trial court should have conducted a hearing to make a threshold determination regarding the voluntariness of statements before the evidence was admissible.

The *Griffin* court concluded that the trial court erred in failing to hold such a hearing, and this court remanded the case to the trial court with directions "to hold a hearing, make an express threshold determination of voluntariness under OCGA § 24-3-50 on the record, and, only upon finding that the statements were voluntary, admit the defendants' confessions." Id. at 324. In reaching this holding, the *Griffin* court stated that in enacting OCGA § 24-3-50, "the Georgia General Assembly deemed inadmissible *all* involuntary confessions, i.e., those that result from the hope of benefit or the fear of injury, not just confessions resulting from official state action." (Emphasis in original.) *Griffin*, 230 Ga. App. at 322.

In this case, the trial court conducted a hearing in light of *Griffin* and OCGA § 24-3-50 and concluded that Wiley's statements were voluntary and admissible.[2] We find no error in this ruling and conclude that Wiley's statements to the victim's father were made voluntarily. And, in the present context the trial court's conclusion that the statement was not rendered involuntary by the hope of benefit was not clearly erroneous.

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED AUGUST 17, 2000.

*Kelley S. Powell*, for appellant.

*Tommy K. Floyd, District Attorney, Thomas R. McBerry, Assistant District Attorney*, for appellee.

---

[2] We note that the circumstances in *Griffin* differed significantly from the situation here: *Griffin* involved a coercive environment, unlike the instant factual scenario. Nevertheless, the language from *Griffin* is broad, and our Supreme Court has cited the case with approval. See *Cook v. State*, 270 Ga. 820, 828 (2) (514 SE2d 657) (1999) (citing *Griffin* for the proposition that "when confession is made to a witness who is not a state agent, it must still be voluntary under OCGA § 24-3-50." *Cook* at 828.).