A05A0238. AWOLUSI v. THE STATE.
(615 SE2d 177)

SMITH, Presiding Judge.

Marta Awolusi was charged by accusation with two counts of felony theft by taking. A jury found her guilty on one count and not guilty on the other. Her motion for new trial, which was amended twice, was denied. Awolusi appeals, raising three enumerations of error in which she challenges the trial court's denial of her motions to suppress evidence and inculpatory statements and claims that her trial counsel was ineffective. We find no merit in Awolusi's contentions, and we affirm the judgment below.

The record shows that Awolusi was employed by Macy's at·its Perimeter Mall store from 1989 to 1996, working in the fine jewelry department. She left Macy's in 1996 when she purchased a boutique, known as Side Street, in another mall. In June 1998, she closed her store and returned to Macy's. In November 1998, while still working at Macy's as a sales associate in the fine jewelry department, she opened another jewelry and clothing boutique in Buckhead.

In January 1999, Macy's discovered a shortage in the fine jewelry department's inventory. A review of employees' records showed nothing that "stood out." Because Macy's loss prevention officers received information that Awolusi had a store in the Atlanta area, they focused their attention on her. Macy's investigators went to Awolusi's store to see if any Macy's merchandise was for sale there. The investigators found that Awolusi was, in fact, selling in her boutique fine jewelry

that still had Macy's tags attached. A private investigator then was brought in to make a purchase of the suspect merchandise from the boutique. In addition to the Macy's price tag, the item the investigator bought at the boutique had a stock-keeping unit, or SKU, number that matched an item that had been in Macy's Perimeter location. After making another purchase at the boutique, Macy's investigators notified the DeKalb County police department.

Awolusi was confronted and interviewed by the Macy's loss prevention officers in April 1999. The interview took place in the store manager's office at Perimeter Mall, and at first Awolusi denied any knowledge of the inventory shortages. After she was informed that the investigators had obtained a search warrant for her store, however, she admitted that she had "removed merchandise from Macy's without paying for it." She stated that she took "four to five pieces per day," concealing the jewelry in her handbag, and that the small thefts added up to approximately eighty items. A written statement was prepared for Awolusi's signature, and she signed it. This statement was read to the jury and admitted into evidence over objection.

While Awolusi was being interviewed, the police executed the search warrant at Awolusi's Buckhead boutique and seized over 200 pieces of jewelry, several of which still had Macy's price tags attached. Later that evening, Awolusi was taken to the DeKalb County police station and questioned again, this time by a police detective and a Macy's security officer, in the presence of several other Macy's employees. Awolusi was *Mirandized* and signed a waiver of her *Miranda* rights. Written and taped statements admitting the thefts were taken, and Awolusi was then arrested. Awolusi's statements were also admitted over objection and read to, shown to, or played for the jury.

Awolusi testified at the trial, stating that she used her employee discount and Macy's sale prices to purchase merchandise to resell at her store at a markup. She was unable, however, to produce any receipts for these purchases.

1. Awolusi first contends the trial court erred in denying her motion to suppress the jewelry seized from her store because the affidavit given in support of the search warrant contained false and misleading information. Atlanta police detective J. K. Sutton prepared the affidavit for the search warrant. He testified before the magistrate that the SKU numbers found on the jewelry in Awolusi's store could be used to trace each individual item missing from the inventory list at Macy's Perimeter Mall store because SKU numbers are similar to vehicle indentification numbers on cars. At trial, however, this information was shown to be incorrect. As demonstrated at trial, SKU numbers are the same for identical merchandise, so that identical pieces of jewelry would display the same SKU

number. Macy's regional jewelry coordinator testified that by "looking at the item and even looking at a SKU, there is nothing that would show me by looking at the ticket specific location, no." But when an item is brought into a store for sale, its SKU number is added to the store's inventory via computer. When that item is sold, the SKU number is scanned at the register, and the computer deletes the item from the store's inventory list.

A Macy's security officer testified at the hearing on the motion to suppress that she was present when the affidavit was presented to the magistrate. The security officer further testified that the magistrate asked the same questions raised by defense counsel regarding the uniqueness of the SKU numbers, and that she gave the magistrate the correct information regarding those numbers, as outlined above. She testified that SKU numbers were nevertheless helpful, because using the inventory list, she could account for all the jewelry except pieces with certain SKU numbers, which were missing. The unaccounted for jewelry with those SKU numbers was found at Awolusi's boutique.

During the motion to suppress hearing, the trial court conducted a lengthy colloquy with counsel regarding the defense contention that the statements in the affidavit were false and misleading and did not constitute probable cause to issue the warrant.

> In determining probable cause for a search warrant, the magistrate is merely to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before the magistrate, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Ultimately, this Court's role on review is to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant.

(Citations and punctuation omitted.) *State v. Graddy*, 262 Ga. App. 98 (1) (585 SE2d 147) (2003), aff'd, *Graddy v. State*, 277 Ga. 765 (596 SE2d 109) (2004). The burden of proving a lawful search and seizure is on the State. OCGA § 17-5-30 (b); *Davis v. State*, 266 Ga. 212, 212-213 (465 SE2d 438) (1996). Great deference is accorded to the magistrate's finding of probable cause. The trial court resolved the credibility issues inherent in the evidence in favor of the State. We agree with the trial court that, even disregarding the information concerning the SKU numbers, sufficient probable cause existed for the magistrate to issue the warrant.

Awolusi worked in the fine jewelry department at Macy's, where the jewelry was kept under lock and key, and she had access to the key. The inventory showed certain specific pieces of jewelry missing, and pieces of that same description, some still bearing Macy's tags, were found offered for sale at a store owned by Awolusi. We agree with the trial court that under the totality of the circumstances, probable cause existed for issuing the warrant. The trial court therefore did not err in denying Awolusi's motion to suppress this evidence.

2. Awolusi next complains that the trial court erred in admitting the inculpatory statements made by her to Macy's personnel and to the DeKalb County police detective, claiming that her statements were the result of coercion and were not freely and voluntarily given.

To be admissible, a confession must have been made voluntarily, without being induced by "the slightest hope of benefit or remotest fear of injury." OCGA § 24-3-50.[1] The trial court is required to make a threshold determination regarding whether a confession was freely and voluntarily given and therefore admissible, and as a reviewing court we must accept the credibility determinations made by the trial court unless clearly erroneous. *State v. Roberts*, 273 Ga. 514 (1) (543 SE2d 725) (2001). The totality of the circumstances must be considered in determining whether a confession was voluntary. Id. at 515 (2).

(a) Awolusi contends that her statement to Macy's security officers was coerced because her questioners did not inform her of her *Miranda* rights. She admits that private actors are not required to do so, but she argues that it "would have been advisable" because she is not a native English speaker, having been born in Poland. Awolusi had been in this country for 17 years, however, and was fluent enough to work in businesses involved in retail sales.

She also testified that Macy's personnel threatened to jail her family, disrupt her wedding plans, or reveal her fiancé's alleged criminal history. She testified that she signed the confession only because she was tired and they promised her she could go home if she did. But four witnesses from Macy's security staff who were present at the interview testified that no threats or promises were made and that the statements were freely and voluntarily given. The regional security director testified that he did not know of Awolusi's marriage plans and "absolutely [did] not" threaten her marriage plans. Although some personnel knew of Awolusi's impending marriage and

---

[1] No indication exists in the statute that it applies only to confessions made to State actors or agents. The statute therefore applies to private actors as well as to government entities and officers. *Griffin v. State*, 230 Ga. App. 318, 320 (496 SE2d 480) (1998). "[E]ven when made to a witness who is not a [S]tate agent, as in this case, a confession must be voluntary to be admissible for any purpose under OCGA § 24-3-50. [Cits.]" Id.

admitted it had come up at some point in the interview, they denied threatening to disrupt her wedding plans if she did not cooperate.

Awolusi admitted she signed a statement confessing that she took the merchandise and describing how she transported it out of the store. Her assertion that she was not given an opportunity to read the statement prepared by Macy's personnel before signing it was contradicted by others present, who testified to the contrary. The evidence was in conflict, and the trial court obviously believed the testimony of the store personnel rather than that of Awolusi.

(b) Awolusi also maintains she was threatened by the DeKalb County detective who interviewed her at the police station in the presence of several Macy's security personnel. She argues that she was not read the *Miranda* warnings, but was simply told to sign the form waiving her rights. But the detective who questioned her testified that she was given *Miranda* warnings "at least twice" before signing the waiver form and giving her statement. He described the process in detail, testifying that he read it aloud to her after handing her a copy of the standard form explaining her rights, and that she then signed the form and gave her statement.

Awolusi also claims that she was exhausted after being interrogated by Macy's personnel for several hours and that the police detective added to the coercive nature of the interview by the presence of Macy's personnel, which intimidated her. Nevertheless, she did not take opportunities when the Macy's personnel were not present to tell the detective her version of the matter. She also argues that her statement to the detective should have been suppressed because it was based largely upon the statement given to Macy's personnel, which violated her rights under OCGA § 24-3-50. We have already concluded, however, that the Macy's interview did not violate Awolusi's rights and that the statement she signed there was admissible as freely and voluntarily given. It follows that the statement Awolusi gave the DeKalb County detective did not violate her rights simply because it tracked the statement given to Macy's.

Awolusi also alleges that she was promised she could go home if she gave the police a statement. But the detective pointed out that the handwriting appeared to be that of Awolusi. He testified that he did not threaten her or promise her anything. In fact, he acknowledged that she seemed "eager" to tell him what happened. The detective also testified that before he recorded the taped interview he told Awolusi she would have to spend the night in jail because the hour was late, and he could not transport her to DeKalb police headquarters in time to have a bond hearing that evening. The trial court concluded after hearing the evidence that the statement given to the police was also freely and voluntarily given.

The trial court makes findings of fact and credibility regarding the admissibility of a defendant's inculpatory statements, and those determinations are upheld on appeal unless clearly erroneous. Inasmuch as the trial court's determinations regarding the admissibility of appellant's statements are supported by the testimony of the investigating officer, the trial court's findings are not clearly erroneous and will not be disturbed on appeal. Accordingly, [Awolusi's] contentions that the statements were inadmissible because they were the product of coercion . . . are without merit.

(Citations omitted.) *Prince v. State*, 277 Ga. 230, 232 (2) (587 SE2d 637) (2003).

3. In her final enumeration of error, Awolusi asserts that her trial counsel was ineffective. We do not agree.

Under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), to prove a claim of ineffective assistance of counsel, a defendant must show first that her counsel's performance was deficient, and second, that counsel's deficient performance prejudiced her defense. *Wyley v. State*, 259 Ga. App. 348, 349 (2) (577 SE2d 32) (2003). If the showing on one prong of this test is insufficient, we need not address the other prong. *Brown v. State*, 225 Ga. App. 49, 51 (1) (b) (483 SE2d 318) (1997). A "trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous." (Citation and punctuation omitted.) *Wynn v. State*, 228 Ga. App. 124, 127 (3) (491 SE2d 149) (1997). Counsel's performance must not be evaluated in hindsight, and a strong presumption exists "that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy." (Citations and punctuation omitted.) Id.

We note initially that Awolusi's counsel was well qualified, having worked previously as a DeKalb County assistant solicitor-general and having also defended numerous criminal cases and conducted over 50 trials. He conducted discovery, planned a strategy, filed motions, and consulted numerous times with his client.

Awolusi nevertheless finds fault with trial counsel's performance. She alleges that counsel was ineffective in failing to present critical evidence showing that she purchased the Macy's jewelry legitimately. Her trial counsel testified at the hearing on the motion for new trial that Awolusi had given him some receipts and cancelled checks, but that none of them reflected purchases at Macy's.

Trial counsel testified that he did not introduce into evidence certain photographs that Awolusi now claims were important, because they showed only the display cases from her two boutiques and were irrelevant to the issue. Counsel also stated he was "not comfortable with the authenticity" of the photographs taken by Awolusi's fiancé (now her husband) because they did not "match up" with other photographs he had seen. Certainly counsel cannot be faulted for refusing to aid his client in offering questionable, possibly perjured, evidence. *Nicholson v. State*, 265 Ga. 711, 715 (4) (462 SE2d 144) (1995).

Finally, the State introduced into evidence only 11 items of jewelry out of more than 200 items seized from her store. Awolusi challenges her trial counsel's failure to object to the introduction of so few pieces of jewelry and his failure to inspect these items before trial. Trial counsel testified, however, that the seized items were returned to Macy's before he entered an appearance in the case. In addition, Awolusi has utterly failed to show how the display of only a small number of the actual items recovered from her boutique and the substitution of photographs and identifying documents for the others could possibly have prejudiced her defense or how a timely objection would have resulted in a different outcome.

In summary, Awolusi has not shown any deficiencies in trial counsel's performance. But even should we consider counsel's performance deficient, which we do not, Awolusi has not shown that the outcome of her trial would have been different had counsel acted differently. If the evidence against Awolusi was not overwhelming, it was nonetheless quite compelling. Having satisfied neither prong of the *Strickland* test, Awolusi's claim of ineffective assistance of counsel fails.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MAY 20, 2005.

*Stuckey & Manheimer, Stephanie S. Benfield*, for appellant.
*Jeffrey H. Brickman, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.