## S03A1108. PRINCE v. THE STATE.
(587 SE2d 637)

BENHAM, Justice.

Appellant Joseph Tiger Prince was found guilty of malice murder in connection with the homicide of Edgar "Uncle Buddy" Reagan a/k/a Riggins, and was sentenced to life imprisonment without the

---

[7] *Canada v. State,* 275 Ga. 131, 133 (562 SE2d 508) (2002).
[8] See *Davis v. State,* 255 Ga. 598, 606 (340 SE2d 869) (1986).

possibility of parole.[1] After reviewing the errors he asserts on appeal, we conclude none has merit and affirm the judgment of conviction.

1. The victim's body was found in his Albany home on Dorsett Avenue on August 11, 1995, after neighbors had not seen him on his front porch where he normally spent a great deal of time. Police found the victim's home to have been ransacked. The medical examiner who performed the autopsy testified the body had sustained over 55 stab wounds and slashes on the head, neck, back, chest, upper arms, and palms. One stab wound had punctured the subclavin vein in the victim's neck and others had punctured his lungs and thoracic aorta, causing the victim to bleed to death. A neighbor testified the victim sold collard greens and cigarettes from his home. A friend of appellant testified appellant came to her home one August morning with a shaving kit full of cigarettes and money and told her he wanted to have a good time because he was going to get "locked up." This witness and a former girlfriend of appellant testified appellant had a deep cut on his hand for which he refused medical attention. The former girlfriend testified that several days after she saw appellant and his wounded hand, appellant threatened to "cut" her "just like [he] cut that old [man] on Dorsett." A bloodstained curtain at the victim's home contained blood from two individuals, and a GBI DNA analyst who ran tests on the stains and known blood samples from appellant and the victim testified the stains were consistent with having been contributed by the victim and appellant. After being arrested and advised of his constitutional rights, appellant gave a 12-page handwritten statement to police and then, over the next several days, made two oral statements that were audiotaped by the investigating officers.[2] A convicted felon with charges pending in Dougherty County notified authorities a week before appellant's 1999 trial that

---

[1] The crime occurred on August 10, 1995, and appellant was arrested on August 25, 1995, for refusing to submit to a polygraph examination, a condition of probation imposed for an earlier conviction. The Dougherty County grand jury returned a true bill of indictment charging appellant with malice murder on October 12, 1995. Appellant's trial commenced on January 11, 1999, and concluded on January 13 with the jury's return of a guilty verdict and the filing of appellant's sentence. His motion for new trial, filed February 3, 1999, and amended by appellate counsel on August 15, 2002, was the subject of a hearing held on April 24, 2002, and was denied by order entered October 21, 2002. That order was set aside due to failure to notify defense counsel of its entry and, on April 1, 2003, the trial court entered an amended order denying the amended motion for new trial. A notice of appeal was filed on April 1, and the case was docketed in this Court on April 9. Oral argument was heard on July 15, 2003.

[2] The audiotapes were played to the jury and transcripts of the contents were provided to the jury. The court reporter did not transcribe the tapes as they were played to the jury and the tapes have not been made a part of the appellate record. According to appellant's brief, appellant admitted in the first audiotaped statement that he was present when the victim was killed and, in the second audiotaped statement, admitted he had killed the victim.

he had information about the case and, at trial, identified appellant as the man he saw running down the steps and around the side of the victim's home the night the victim was killed in 1995. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant complains the trial court erred in admitting appellant's three custodial statements, asserting they were inadmissible because they were the product of an unlawful arrest, they were coerced, and they were given after appellant's request for counsel was ignored. After holding three hearings at which testimony was given regarding appellant's statements, the trial court found appellant had given four statements and ruled the first statement inadmissible because appellant had invoked his right to counsel, and the statements admitted at trial (the second, third, and fourth statements) admissible because appellant had initiated contact with the investigating officers, had been advised of his rights on each occasion, and had waived his rights freely and voluntarily.

The trial court makes findings of fact and credibility regarding the admissibility of a defendant's inculpatory statements, and those determinations are upheld on appeal unless clearly erroneous. *Perry v. State*, 274 Ga. 236 (1) (552 SE2d 798) (2001). Inasmuch as the trial court's determinations regarding the admissibility of appellant's statements are supported by the testimony of the investigating officer, the trial court's findings are not clearly erroneous and will not be disturbed on appeal. *Benford v. State*, 272 Ga. 348 (2) (528 SE2d 795) (2000). Accordingly, appellant's contentions that the statements were inadmissible because they were the product of coercion and because they followed appellant's invocation of his right to counsel are without merit.

Appellant also contends the statements were inadmissible because they were the product of an unlawful arrest not supported by probable cause.[3] See *State v. Harris*, 256 Ga. 24 (343 SE2d 483) (1986). Appellant contends he was under arrest when he was brought to the police station for questioning. At trial, the investigating officer testified appellant developed as a suspect from information gathered in canvassing the neighborhood in which both appellant and the victim lived and, prior to bringing appellant to the station for questioning, the officer observed cuts on appellant's hand consistent with

---

[3] Our review of the record has not found this to be a ground raised in the trial court for suppression of the statements, and there is no testimony in the pre-trial hearings on this ground. Consequently, the trial court's ruling does not refer to this ground and makes no finding on this ground. Compare *Monroe v. State*, 272 Ga. 201 (6), n. 5 (528 SE2d 504) (2000).

having been inflicted by a knife. Assuming there was an arrest, since the arresting officer had knowledge and reasonably trustworthy information sufficient for a prudent person to believe the accused had committed the offense, there was probable cause to arrest. See *Brown v. State*, 262 Ga. 728 (2) (a) (425 SE2d 856) (1993). Appellant's contention on appeal is therefore without merit.

3. Appellant contends trial counsel provided ineffective assistance of counsel. In order to prevail on such a claim, appellant "must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [Cits.]" *Chapman v. State*, 273 Ga. 348, 349 (2) (541 SE2d 634) (2001). In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo. *Washington v. State*, 276 Ga. 655 (3) (581 SE2d 518) (2003).

Appellant maintains counsel performed deficiently when counsel failed to introduce at trial or during the *Jackson-Denno* hearing evidence of appellant's mental incapacity. Appellant also contends counsel was deficient when counsel failed to strike a detention officer from the jury venire and then failed to seek that juror's removal after the juror revealed during the trial that he, while serving as a detention officer in the facility holding appellant, had talked with appellant about the pre-trial progress of appellant's case. At the hearing on appellant's motion for new trial, appellant introduced a copy of a psychiatric report on appellant. In the report dated March 18, 1997, a psychiatrist opined that appellant was "in a state of cocaine intoxication and had perceptual disturbance that would fall under the legal term of insanity" both before and after the victim's murder, and that "there was and still is a brain dementia, cocaine related, that accounts for his strange confession and denial of the murder." Appellant's trial counsel testified at the hearing that the psychiatrist and the report were not used at trial because the defense, after consulting with appellant, was proceeding under a theory of innocence rather than mental illness. Trial counsel characterized the presentation of evidence of mental illness while contending appellant did not commit the crime as "an insult to the jury" that would have "muddied the water."

According to the American Bar Association's Standards for Criminal Justice, endorsed by this Court in *Reid v. State*, 235 Ga. 378, 379 (219 SE2d 740) (1975), *Van Alstine v. State*, 263 Ga. 1, 2-3 (426 SE2d 360) (1993), and *Chapman v. State*, supra, 273 Ga. at 351 (2),

> decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (and) (iii) whether to testify. . . . What trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with [the] client.

Id. It is undisputed that appellant entered a plea of not guilty after consulting with his attorneys. Counsel's decision not to use evidence of appellant's purported cocaine intoxication that conflicted with appellant's plea of not guilty is a matter of trial strategy within the exclusive province of the lawyer after consultation with the client, and falls within the bounds of reasonable professional conduct. See *Jenkins v. State*, 268 Ga. 468 (10) (491 SE2d 54) (1997). The trial court did not err when it determined that trial counsel's decision not to use the psychiatric evidence did not constitute ineffective assistance of counsel.

Trial counsel testified on the motion for new trial that he could not speak to the failure to use the psychiatric opinion at the *Jackson-Denno* hearing because he did not represent appellant at the time of the *Jackson-Denno* hearing. Trial co-counsel, who was a member of the defense team at the time of the *Jackson-Denno* hearing, testified she had not been aware of the existence of the psychiatric report until the day before the hearing on the motion for new trial. Trial counsel at the time of the *Jackson-Denno* hearing who might have known about the psychiatric report did not testify on the motion for new trial. Consequently, appellant did not make the necessary affirmative showing that the failure to use the psychiatric report at the *Jackson-Denno* hearing was deficient performance on the part of trial counsel and not the result of conscious and deliberate trial strategy. *Morgan v. State*, 275 Ga. 222 (10) (564 SE2d 192) (2002). Since appellant did not overcome the strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct, the trial court did not err when it concluded appellant had not carried his burden of establishing ineffective assistance of counsel.

Appellant's second example of purported ineffective assistance of counsel concerns the presence on the jury of a detention officer stationed in the jail where appellant was housed prior to trial. After the close of the evidence, the trial court, faced with an allegation that certain jurors had not disclosed "prior dealings with or knowledge of or friendship with the defendant," conducted individualized exami-

nations of each juror.[4] During his interview, the juror/detention officer acknowledged he had interacted with appellant at his job prior to trial by supervising the inmate and talking with appellant about appellant having filed motions and how things went in court when appellant made court appearances. The juror stated he had not formed any feelings about the case prior to trial and there was nothing that would affect his ability to be fair and impartial based on the evidence presented at trial.

At the hearing on the motion for new trial, trial counsel testified he had noted on his jury selection sheet during voir dire that the venireman worked at the jail and knew the defendant, the two investigating officers, and the attorney's law partner, and that the attorney had drawn a question mark on the sheet under the juror's information, signifying he had some concern about the venireman and wanted to talk to appellant about him. The attorney testified his failure to strike the venireman indicated appellant "had no problem with him and I had no problem with him either . . . a lot of time if a juror knows a defendant, sometimes that can work in your favor. . . ." The attorney characterized that his decision to keep the venireman on the jury panel was a matter of trial strategy. Trial co-counsel recalled at the hearing on the motion for new trial the juror as having had "very limited" contact with appellant, and surmised that the only reason the juror would have remained on the jury was because appellant believed he would be favorable.

Relying on *Kirkland v. State*, 274 Ga. 778 (2) (560 SE2d 6) (2002), appellant contends trial counsel's failure to remove a biased person from the jury panel in the absence of a strategic motive constitutes ineffective assistance of counsel. Appellant's position presupposes that the juror was subject to dismissal for cause and that there was no strategy exercised in the decision not to strike the juror from the venire. However, neither proposition is apropos of the case at bar. In order to be subject to dismissal for cause, a member of the venire who is a law enforcement officer must be a full-time sworn police officer with arrest powers. *Glover v. State*, 274 Ga. 213 (2) (552 SE2d 804) (2001); *Hutcheson v. State*, 246 Ga. 13 (2) (268 SE2d 643) (1980). A corrections officer is not subject to an excusal for cause because he is not a sworn police officer with arrest powers. *Pace v. State*, 271 Ga. 829 (10) (524 SE2d 490) (1999). In the case at bar, the parties stipulated the detention officer was not subject to dismissal for cause because he was not certified by the Peace Officer Standards and Training Council, and there was no evidence that the detention

---

[4] Based on the information gathered during these examinations, an alternate juror was dismissed.

officer was a sworn police officer with arrest powers. Accordingly, there is no evidence that the detention officer was subject to dismissal for cause. Even if we assume the detention officer was subject to dismissal for cause, there was evidence that his retention as a member of the jury was a strategic decision since trial counsel testified he was aware the juror knew appellant, he consulted with appellant concerning the officer's presence on the jury, and retained him since there are benefits to having a juror who is acquainted with the defendant. Consequently, we conclude the trial court did not err when it concluded trial counsel had not rendered ineffective assistance of counsel with regard to the presence of the detention officer on the jury.

4. Lastly, appellant contends the trial court erred when it did not sua sponte remove the detention officer/juror once the court was made aware of the juror's relationship with appellant and the juror's prior knowledge of the case.

"If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated. . . ." OCGA § 15-12-172. The statute gives the trial court general authority to dismiss a juror and replace the dismissed juror with an alternate. *Reynolds v. State*, 271 Ga. 174 (2) (517 SE2d 51) (1999). The trial court exercises its discretion in making such a substitution. *Perry v. State*, 255 Ga. 490 (5) (339 SE2d 922) (1986). Where a juror unequivocally states he could set aside his personal opinion and consider the evidence presented and the law as charged by the trial court and there is no evidence that the juror was incapable of rendering an impartial verdict, the trial court does not abuse its discretion by retaining the juror. *McDaniel v. State*, 257 Ga. 345 (2) (359 SE2d 642) (1987). Compare *Reynolds v. State*, supra, 271 Ga. at 175 (2) (trial court did not abuse its discretion when it dismissed and replaced juror who acknowledged it would be difficult for him to return a guilty verdict against the defendant in light of the juror's acquaintance with members of the defendant's family); *Ganas v. State*, 245 Ga. App. 645 (3) (537 SE2d 758) (2000) (trial court did not err in dismissing juror who could not lay aside a fixed and definite opinion and decide the case on the evidence presented and the trial court's instructions). In the case at bar, the detention officer/juror stated that his prior encounters with the defendant did not result in his formation of an opinion about the case and did not affect his ability to be fair and impartial based on the evidence presented at trial. The trial court did not abuse its discretion in retaining the juror. *McDaniel v. State*, supra, 257 Ga. at 346.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 20, 2003.

*Donaldson, Bell & Pickett, Mark L. Pickett*, for appellant.
*Kenneth B. Hodges III, District Attorney, Gregory W. Edwards, Alex J. Kaplan, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.