S06A2107. HEIGHT v. THE STATE.
(642 SE2d 812)

HUNSTEIN, Presiding Justice.

Marvin Lee Height was convicted of murder in the January 2001 beating death of Lorange Wood.[1] For the reasons that follow, we affirm.

1. In his first enumeration of error, Height contends that the evidence presented was insufficient to show that he was responsible for Wood's death. Viewed in the light most favorable to the verdict, the evidence adduced at trial reflects that on January 3, 2001, Wood was found beaten to death inside the gas station store he owned and operated in Dudley, Georgia. He was last seen alive on the previous day at approximately 3:00 p.m. at a local bank, where he cashed a check and requested payment in ten dollar denominations. Shortly after that time, a customer visited the gas station, where the truck Wood had driven to the bank was parked, but left after Wood failed to emerge to pump her gas. Another customer then arrived and, while waiting for a response to his knock at the door of the store, encountered Height, an employee at Wood's store, who told the customer that Wood was asleep. After Wood's body was discovered the following day, a Department of Corrections K-9 dog led investigators from the crime scene to a nearby wooded area, where investigators found weapons used in the crime, and then directly to a nearby mobile home in which Height resided. Approximately one week later, Height voluntarily approached police and made statements indicating knowledge about details of the crime that had not been released to the public, on the basis of which police obtained a search warrant and found a wallet containing 25 ten dollar bills in Height's trailer. After

---

[1] The crime occurred on January 3, 2001. Height was indicted for murder by a Laurens County grand jury on October 2, 2001. The State initially notified Height of its intent to seek the death penalty; however, following interim review by this Court on an evidentiary matter, see *Height v. State*, 278 Ga. 592 (604 SE2d 796) (2004), the State withdrew its intent to seek the death penalty. A jury trial was held on March 14-18, 2005. Height was convicted and sentenced to life imprisonment. Height filed a motion for new trial on March 31, 2005, which was denied on June 30, 2006. On July 24, 2006, Height filed a timely notice of appeal. The appeal was docketed in this Court on August 16, 2006 and submitted for decision on the briefs.

his arrest, Height confessed to the crime in an account consistent with the evidence uncovered in the investigation.

The evidence was clearly sufficient for the jury to conclude beyond a reasonable doubt that Height was guilty of Wood's murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Height next contends that the trial court erred by admitting into evidence the last of three custodial statements he made to police on the day of his arrest in which he confessed to committing the crime. This statement was examined at Height's *Jackson v. Denno*[2] hearing, at which the trial court held inadmissible two prior statements made by Height to police on the day of Height's arrest due to the failure to curtail questioning following Height's request for an attorney.

Where, in the course of a custodial interrogation, a defendant invokes his right to counsel, subsequent statements in response to further questioning are admissible only if (1) the defendant initiated the subsequent discussions and (2) the waiver of his previously invoked right was knowing and intelligent. *Edwards v. Arizona*, 451 U. S. 477 (II) (101 SC 1880, 68 LE2d 378) (1981); *McDougal v. State*, 277 Ga. 493, 500 (1) (591 SE2d 788) (2004). In this case, it is undisputed that Height initiated the further discussions with police leading to the statement in question, was re-apprised of his *Miranda* rights in full, and signed a written waiver prior to giving his statement. The "taint" of the prior *Edwards* violation was, thus, overcome. See, e.g., *Prince v. State*, 277 Ga. 230 (2) (587 SE2d 637) (2003) (defendant's inculpatory statements held admissible in spite of previous *Edwards* violation where appellant initiated contact with investigators, was advised of rights, and waived them).

Height contends, however, that because of his below average intellect, he was unable to understand his rights or to knowingly and intelligently waive them, thus rendering his waiver invalid and his statement inadmissible. Whether a defendant's waiver of rights is knowing and intelligent is to be determined based on the totality of the circumstances. *McDougal*, supra, 277 Ga. at 500. The mere fact of below average intelligence or even moderate mental retardation is not by itself sufficient to justify exclusion of an inculpatory statement, without additional evidence that the defendant lacked the capacity to understand and knowingly waive his rights. *Coppock v. State*, 273 Ga. 324 (2) (540 SE2d 187) (2001); *Brown v. State*, 262 Ga. 833 (6) (426 SE2d 559) (1993).

On the issue of Height's mental capacity, the trial court considered testimony from two expert witnesses, one court-appointed and one retained by the defense, as well as the results of a court-ordered

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

forensic evaluation regarding Height's competency to stand trial. The assessments of Height's intelligence and adaptive functioning skills differed markedly between the two experts, with the court-appointed expert assessing Height at borderline to low average intelligence and normal adaptive skills and Height's expert assessing him as mildly retarded and having significantly impaired adaptive skills. The court also heard testimony from the agents who questioned Height, all of whom testified that Height never in the course of his discussions with police appeared confused about his rights.

"A trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal unless clearly erroneous." *Brown*, supra, 262 Ga. at 835. Here, the trial court considered conflicting expert testimony in conjunction with other evidence of Height's mental capacity and concluded that Height understood his rights and the consequences of waiving them. We see no grounds to disturb this finding.

3. In his third enumeration of error, Height contends that the trial court erred by dismissing a potential juror from the venire because of his religious convictions. Assuming, arguendo, that the trial court prematurely dismissed Juror # 50 without sufficiently probing his beliefs or affording the defense an opportunity to rehabilitate him, any alleged error was harmless. See *Pye v. State*, 269 Ga. 779 (2), (3) (505 SE2d 4) (1998) (alleged errors occurring in connection with jury selection not reversible if harmless). It is undisputed that the trial court conducted voir dire in panels of 12 potential jurors at a time and that the jury was ultimately selected from the first three panels questioned, before Juror # 50 would have been called. Therefore, even if Juror # 50 had not been excused, he would not have ultimately been considered for the jury, and thus his dismissal had no impact on the eventual composition of the jury. Accordingly, this enumeration is without merit.

4. In his final enumeration, Height contends that the trial court erred by denying his motion for mistrial based on testimony that he claims improperly placed his character in evidence in violation of OCGA § 24-2-2. On direct examination, Officer Clyde Tipton, an investigator with the Laurens County Sheriff's Department, testified in response to questioning about his long-time acquaintance with Height, "I had known [Height], like I say, for years. I had a couple of cases against [Height], well what should have been cases, I could have charged him —." At this point, the prosecutor interrupted and redirected the officer's testimony. The defense then moved for a mistrial, and the trial court denied the motion but immediately issued a curative instruction directing the jury to disregard "[a]ny evidence relating to any prior conduct on the part of the defendant."

This Court has held previously that a passing reference to a defendant's criminal record does not suffice to put his character in evidence so as to violate OCGA § 24-2-2. *Johnson v. State*, 256 Ga. 604 (2) (351 SE2d 623) (1987). Furthermore, the trial court's curative instruction remedied any prejudicial impact Officer Tipton's statement may have had. See *Brown v. State*, 268 Ga. 455 (1) (490 SE2d 379) (1997) (curative instruction sufficient to cure any potential prejudice resulting from reference to probation violation warrants). Under these circumstances, the trial court did not abuse its discretion by denying the motion for mistrial. See *Stanley v. State*, 250 Ga. 3 (2) (295 SE2d 315) (1982).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 19, 2007.

*Garrett & Gilliard, Michael C. Garrett*, for appellant.
*Ralph M. Walke, District Attorney, Peter F. Larsen, Assistant District Attorney, Thurbert E. Baker, Attorney General, Laura D. Dyes, Assistant Attorney General*, for appellee.