## A08A0639. THOMAS v. THE STATE.
(662 SE2d 849)

MIKELL, Judge.

Corey Thomas was convicted of possession of cocaine with intent to distribute by an Emanuel County jury.[1] Thomas was sentenced to 30 years, 15 to serve without parole and the remainder on probation. On appeal, Thomas challenges the sufficiency of the evidence and argues that the trial court erred by failing to charge the jury on equal access, by admitting the prior convictions of two witnesses, and by denying his motions for a mistrial and a directed verdict of acquittal. Thomas also contends that the trial court erred when it sentenced him as a recidivist and in failing to find his trial counsel ineffective. For the reasons stated below, we affirm.

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict.[2] So viewed, the evidence

---

[1] Thomas was jointly indicted with Quinton Pearson, but Pearson was not prosecuted.

[2] *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998).

shows that at approximately 7:30 p.m. on February 4, 2005, agents of the East Central Georgia Drug Task Force served a search warrant at 307 Pughsley Street in Swainsboro. The warrant alleged that Vivian Boynton and Robert Foster were selling drugs out of the house. Former agent Travis Akridge testified that when the officers approached the residence, he saw an individual, later identified as Thomas, sitting on a couch inside the residence and heard him say "task force" before he ran toward the back of the residence. According to Akridge, Thomas ran into the bathroom, closing the door on Akridge's arm. When Akridge opened the door and removed Thomas from the bathroom, Thomas tossed a clear plastic bag, which contained crack cocaine, near the refrigerator in the kitchen. Akridge also testified that marijuana was found in the bedroom of one of the owners, who was identified in the search warrant.

On cross-examination, Akridge acknowledged that the case report, which was prepared by Agent Dana Reese, did not include the fact that Thomas had thrown the drugs into the kitchen after Akridge pulled him from the bathroom. Akridge maintained, however, that he reported at the scene that Thomas had possession of the drugs.

Reese testified that Akridge was in front of him and that he saw Akridge follow Thomas as he ran through the house. Reese further testified that the agents searched the residence and found a crack pipe in the vicinity of the living room and that two other people, Kenneth Hopkins and Wayne Johnson, were in the living room when the raid occurred. The agents also found crack cocaine in the kitchen area (that was tossed by Thomas) and $571 in Thomas's possession that included 19 $20 bills. Reese testified that crack cocaine was commonly sold in $20 amounts.

Reese testified that a young lady was found in the back bedroom of the residence. Pearson, Hopkins, and Johnson were searched, but no significant amount of cash was found on any of them. Also, the agents did not find drugs on any of the men, including Thomas. Reese testified that Pearson was arrested along with Thomas because he was in the vicinity of the area where the crack cocaine was found. Reese further testified that if an officer had made him aware that one as opposed to another person had possession of the drugs, he would have arrested that person. On cross-examination, however, Reese admitted that the scene was chaotic and that he did not remember who talked to him at the scene, particularly as this was the first search warrant that he had executed in his career.

1. In his first and fourth enumerated errors, Thomas argues that the trial court should have granted him a new trial and a directed verdict of acquittal due to the insufficiency of the evidence. We address these alleged errors simultaneously.

"The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction."[3] We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*.[4] "The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5] We find the evidence sufficient to support Thomas's conviction.

Thomas contends that the evidence was insufficient because there were other individuals in the residence who had equal access to the area where the cocaine was found, specifically the owners and Pearson, who was arrested because of his proximity to the cocaine. Although the house did not belong to Thomas, the evidence shows that only Thomas was in control of the cocaine before it was seized by the officers. According to Akridge, Thomas was the only person who ran when the officers approached the residence. After Akridge chased Thomas to the back of the house and forcibly removed him from the bathroom, Akridge saw Thomas toss the cocaine into the kitchen. The cocaine was seized shortly thereafter.

Possession of cocaine may be joint or exclusive, actual or constructive.[6] "A person who knowingly has direct physical control over a thing at a given time is in actual possession of it."[7] Here, the evidence was sufficient to support a finding that Thomas had actual possession of the cocaine.[8] Thomas argues that we must give some credence to the fact that no cocaine was found on his person, but "[a]ctual possession requires only direct physical control over a substance; it does not require that the substance be on the defendant's person."[9] Additionally, Thomas was the only person in the house who had a significant amount of money on his person.

In support of his argument that the cocaine did not belong to him, Thomas also offered the testimony of Hopkins and Johnson that they had tried to purchase cocaine from him earlier that evening and he told them he had none. The jury obviously chose to believe Akridge's testimony over that of Hopkins and Johnson. "The cred-

---

[3] (Citation omitted.) *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d 60) (2007).

[4] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] (Punctuation and footnote omitted.) *Christopher v. State*, 262 Ga. App. 257 (585 SE2d 107) (2003).

[6] *Davis v. State*, 270 Ga. App. 777, 779 (1) (607 SE2d 924) (2004).

[7] (Citation omitted.) *Ibekilo v. State*, 277 Ga. App. 384, 387 (3) (626 SE2d 592) (2006).

[8] See *Hall v. State*, 192 Ga. App. 151 (1) (384 SE2d 428) (1989) (evidence was sufficient to show that the defendant actually possessed the contraband when he threw a bag under a porch and the bag containing marijuana, rolling papers and a bottle of cocaine, was immediately retrieved from that location).

[9] (Citation omitted.) *Johnson v. State*, 194 Ga. App. 743, 745 (3) (391 SE2d 716) (1990).

ibility of the witnesses and the weight to be given the evidence are the sole province of the jury. The jury therefore was authorized to reject [Thomas's witnesses'] testimony in favor of the evidence presented by the State."[10] Accordingly, the evidence was sufficient to support a rational trier of fact's finding of guilt beyond a reasonable doubt, and the trial court correctly denied Thomas's motions for new trial and for directed verdict of acquittal.

2. Next, Thomas argues that the trial court erred when it failed to give his request to charge on equal access. Thomas maintains that the owners and Pearson had equal access to the area where the cocaine was found. Again, we find no error.

> The equal access rule entitles a defendant to acquittal where the only evidence of possession is the defendant's ownership or control over the premises, and the defendant can show that others recently had equal access to the premises. It is simply a defense available to the accused to whom a presumption of possession flows.[11]

Here, the state was not relying upon Thomas's ownership or control of the residence to prove that the cocaine found in the kitchen belonged to him. Rather, the state relied upon direct evidence that Thomas tossed the cocaine into the kitchen after he was apprehended by Akridge. Therefore, "no presumption of ownership arose and the equal access defense was not available. Thus, the trial court did not err by failing to charge the jury on equal access."[12]

Thomas incorrectly argues that *State v. Johnson*[13] supports his position that the trial court was required to give an equal access charge. *Johnson* involves the question of whether an equal access charge was required in the context of contraband found in a vehicle.[14] In that case, our Supreme Court held that the equal access charge was not required because no presumption of ownership was placed

---

[10] (Citations and punctuation omitted.) *Gaston v. State*, 257 Ga. App. 480, 482 (1) (571 SE2d 477) (2002).

[11] (Punctuation and footnotes omitted.) *Jackson v. State*, 271 Ga. App. 278, 283 (3) (609 SE2d 207) (2005). Accord *Benson v. State*, 275 Ga. App. 180, 181 (2) (620 SE2d 441) (2005) ("equal access principle is applicable only when the State relies on the presumption that the owner of premises is in possession of all its contents") (citation omitted).

[12] (Footnotes omitted.) *Jackson*, supra. Thomas makes much of the fact that Pearson was arrested because of his proximity to the cocaine and was jointly indicted with Thomas. The jury obviously chose to believe Akridge's testimony that Thomas had actual possession of the cocaine. Nonetheless, even if Pearson had been tried with Thomas, the equal access defense would not have applied as it is not available where there is evidence of joint possession. *Wiggins v. State*, 258 Ga. App. 703, 705 (2) (574 SE2d 896) (2002).

[13] 280 Ga. 511 (630 SE2d 377) (2006).

[14] Id.

into evidence for the jury's consideration.[15] Similarly here, the trial court did not charge on the presumption of ownership.[16] Thus, *Johnson* actually supports the trial court's decision to refuse Thomas's equal access charge.

Thomas maintains that the charge to the jury on constructive possession "specifically presumes possession" and, therefore, triggers the need for the equal access charge, but he cites no authority in support of this position. The court here charged that "[a] person who, though not in actual possession, knowingly has both the power and the intention at any given time to exercise authority or control over a thing is in constructive possession of it." This charge on constructive possession is not tantamount to a charge on the presumption of ownership. Thus, Thomas's argument fails.

3. Thomas contends that the trial court erred when it admitted certified copies of Hopkins's and Johnson's prior convictions at trial. We evaluate the trial court's admission of prior convictions under an abuse of discretion standard.[17]

Thomas offered the testimony of Hopkins and Johnson as a part of his defense. Johnson testified that he was a chronic drug user at the time the raid occurred; that earlier that evening he asked Thomas if he had any drugs; that Thomas told him that he did not; that one of the crack pipes confiscated by the police belonged to him; and that he had a prior conviction for sale of cocaine. Similarly, Hopkins testified that the police found a crack pipe on his person; that he asked Thomas for drugs earlier that evening, and Thomas told him that he did not have any; and that he had a prior conviction for sale of cocaine. After each of the witnesses testified that they had prior felony convictions, the state offered certified copies of their convictions into evidence with no objection from defense counsel. Thomas contends that the admission of the certified prior convictions violated OCGA § 24-9-84.1.

"OCGA § 24-9-84.1 . . . was enacted in 2005 to establish guidelines for the use of criminal convictions to impeach witnesses or defendants who testify."[18] Subsection (a) (1) provides that for the purpose of attacking a witness's credibility,

> [e]vidence that a witness has been convicted of a crime shall be admitted if the crime was punishable by death or

---

[15] Id. at 513.

[16] The presumption of ownership arises when the state relies on the presumption that the owner of premises is in possession of all its contents, which in turn warrants a charge on equal access. *Benson*, supra.

[17] See *Tate v. State*, 289 Ga. App. 479, 481 (657 SE2d 531) (2008).

[18] (Footnote omitted.) *Newsome v. State*, 289 Ga. App. 590, 592 (2) (657 SE2d 540) (2008).

imprisonment of one year or more under the law under which the witness was convicted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the witness.

Thomas argues that this statute imposes upon the trial court the duty to weigh sua sponte the probative value of admitting the evidence against its prejudicial effect to the witness, which the trial court did not do in the instant case. Our research reveals that there is no case law that addresses the issue of whether the trial court must perform sua sponte the balancing test prescribed in OCGA § 24-9-84.1 (a) (1).

In the trial court's order denying Thomas's motion for new trial, it concluded that Thomas waived any objection to the convictions when he failed to object at trial. The trial court noted that Thomas did not object when each witness testified that he had a prior felony conviction nor did he object to the introduction of the certified convictions. Regarding its duty to conduct the balancing test sua sponte, the trial court correctly stated that OCGA § 24-9-84.1 (a) is derived from Rule 609 (a) of the Federal Rules of Evidence[19] and cites to *United States v. Blackshear*.[20] *Blackshear* held that where counsel never articulated an objection to the lack of a Rule 609 procedure in the trial court, the issue could not be addressed on appeal.[21] It follows then that in *Blackshear*, the Fifth Circuit implicitly held that the trial court had no duty to conduct the balancing test sua sponte.

We agree with the trial court that Thomas's failure to object waives the issue on appeal and that it had no duty to conduct the balancing test of OCGA § 24-9-84.1 (a) (1) absent an objection. However, had we concluded that the trial court had such a duty, we would still find that no reversible error occurred in this case. In a criminal case, the standard for weighing nonconstitutional error "is known as the 'highly probable test,' i.e., [whether] it is highly probable that the error did not contribute to the judgment."[22] In this case, the testimony of Hopkins and Johnson was offered primarily to

---

[19] Id. at 593 (2). FRE 609 (a) provides that
[f]or the purpose of attacking the character for truthfulness of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.
[20] 568 F2d 1120 (5th Cir. 1978).
[21] Id. at 1121-1122.
[22] (Citation and punctuation omitted.) *Felder v. State*, 266 Ga. 574, 576 (2) (468 SE2d 769) (1996).

show that earlier on the evening in question, Thomas would not sell them drugs, creating the inference for the jury that the drugs found in the kitchen did not belong to Thomas. However, as discussed in Division 1, there was direct testimony from Akridge that Thomas announced "task force" when he saw the officers and then ran from them, that he tossed the cocaine after he was forcibly removed from a room by Akridge, and that he was the only individual upon whom a significant amount of money was found in denominations regularly used by persons selling cocaine. Reese also testified that Thomas ran when he saw the officers approaching the residence. The jury, of course, was authorized to believe the officers' testimony over that offered by Thomas.[23] Therefore, there is no reasonable probability that the jury's verdict would have been different had the court conducted the balancing test.[24] Accordingly, this enumerated error fails.

4. In his fourth enumerated error, Thomas argues more than one error. He challenges the trial court's denial of his motion for a directed verdict of acquittal, which we addressed in Division 1, and argues that the trial court erred when it denied his motion for mistrial after the state injected Thomas's bad character into evidence.

> Our law requires that enumerations "shall set out separately each error relied upon." OCGA § 5-6-40. When an appellant argues more than one error within a single enumeration, this court in its discretion may elect to review none of the errors so enumerated or elect to review any one or more of the several assertions of error contained within the single enumeration and treat the remaining assertions of error therein as abandoned.[25]

Although we have already addressed one of the errors raised in this enumeration of error in Division 1, we exercise our discretion to address the other error raised therein as well.

Counsel moved for a mistrial after the prosecutor asked investigator Rocky Davis how he knew Thomas, and Davis replied, "I've made contact with him in the streets before and I believe through past cases." After hearing argument, the trial court denied the motion for mistrial and asked if defense counsel wanted a curative instruction. Defense counsel made the tactical decision that a

---

[23] See *Wells v. State*, 281 Ga. 253, 254 (1) (637 SE2d 8) (2006).

[24] *Felder*, supra.

[25] (Citations and punctuation omitted.) *Sheffield v. State*, 237 Ga. App. 701, 702 (2) (516 SE2d 563) (1999).

curative instruction was not necessary, then proceeded without renewing his motion for a mistrial. Consequently, the issue of whether the trial court improperly denied the motion for mistrial is waived on appeal.[26] Further exercising our discretion to address this issue on the merits, however, we point out that "a passing reference to a defendant's criminal record does not suffice to put his character in evidence so as to violate OCGA § 24-2-2."[27] Therefore, we find no abuse of discretion in the trial court's decision to deny Thomas's motion for mistrial.[28]

5. Thomas next contends that the trial court erred when it sentenced him as a recidivist pursuant to OCGA § 17-10-7 (c). We disagree.

OCGA § 17-10-7 (c) provides, in relevant part, as follows:

> [A]ny person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state other than a capital felony must, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

Subsection (d) of the statute states that "conviction of two or more crimes charged on separate counts of one indictment or accusation, or in *two or more indictments or accusations consolidated for trial*, shall be deemed to be only one conviction."[29]

On March 9, 2001, Thomas pled guilty to two separate accusations charging him with possession of cocaine. One of the charges was based on the possession of cocaine on August 9, 1999 (Accusation Number 01-SPCR-25), and the other was based on his possessing cocaine on May 5, 2000 (Accusation Number 01-SPCR-26). On each of those charges, Thomas was sentenced to serve five years on

---

[26] *Clark v. State*, 289 Ga. App. 612, 617 (3) (658 SE2d 190) (2008).

[27] *Height v. State*, 281 Ga. 727, 730 (4) (642 SE2d 812) (2007), citing *Johnson v. State*, 256 Ga. 604, 605 (2) (351 SE2d 623) (1987).

[28] *Rhines v. State*, 288 Ga. App. 128, 130-131 (2) (653 SE2d 500) (2007) ("'(w)hether to grant a mistrial based on improper character evidence is within the discretion of the trial judge. In reviewing the trial court's decision, an appellate court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's actions in dealing with the impropriety") (footnote omitted). See *Isaac v. State*, 269 Ga. 875, 877 (5) (505 SE2d 480) (1998) (no abuse of discretion where motion for mistrial denied after officer referred to fact that defendant was in jail and that he had talked to defendant's probation officer).

[29] (Emphasis supplied.)

intensive probation supervision, and the sentences were to run concurrently with the sentence that Thomas was serving at that time. In July 2004, Thomas again pled guilty to possession of cocaine and was sentenced to five years to serve two and the remainder on probation. Within less than a year, Thomas was charged in the instant case with possession of cocaine with intent to distribute. Thomas argues that the first two convictions should be treated as one because they were merged, with the sentences running concurrently, and that Thomas was led to believe they would be treated as one offense. Thomas offers in support of his contention the testimony of his trial counsel that he worked in the district attorney's office from 1994 through 1998 and that it was the policy of the office to encourage defendants to plea on multiple accusations on the same day and to represent to them that those pleas would only count as one offense for purposes of recidivism.

It is clear from the record that Thomas was sentenced on two separate accusations in 2001 that were not consolidated for trial. Therefore, under OCGA § 17-10-7 (d), the trial court properly refused to treat the two possession charges as one offense for purposes of recidivism. Accordingly, since the offense charged here constituted Thomas's fourth offense, OCGA § 17-10-7 (c) applies.

OCGA § 16-13-30 provides the punishment for the charged offense in the instant case. Subsection (d) provides that

> any person who violates subsection (b) of this Code section with respect to a controlled substance in Schedule I or Schedule II shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than five years nor more than 30 years. Upon conviction of a second or subsequent offense, he or she shall be imprisoned for not less than ten years nor more than 40 years or life imprisonment.

"Cocaine is classified as a controlled substance that is a narcotic drug. OCGA § 16-13-26 (1) (D) lists cocaine as a Schedule II controlled substance."[30] Therefore, the trial court did not err when it sentenced Thomas to 30 years, with 15 to be served without parole and the remaining 15 on probation. Thomas's argument about the practices of the local district attorney's office during years preceding the entry of his first guilty plea is unavailing. It is the law as provided in the applicable statutes rather than local practices that governs.

---

[30] *Dennard v. State*, 265 Ga. App. 229, 230 (593 SE2d 694) (2004).

6. In his last enumeration of error, Thomas argues that his trial counsel was ineffective. Thomas does not explicitly set forth separate alleged deficient acts committed by trial counsel but does argue that the failure to object to the admission of the prior convictions of Hopkins and Johnson caused him harm. Therefore, we will address that alleged claim of ineffectiveness.

> In order to prove his claim of ineffective assistance of counsel, [Thomas] must establish both prongs of the test set out in *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984): (1) that his trial counsel's performance was deficient and (2) that counsel's inadequate performance so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. Failure to satisfy either prong of this two-part test is fatal to an ineffective assistance claim.[31]

In its order denying Thomas's motion for new trial, the trial court pointed out that Thomas's trial counsel testified that he strategically decided not to object to the convictions because he wanted the jury to know that the witnesses, who were present when the raid occurred, were convicted drug users. Trial counsel reasoned that in doing so, he thought that the jury would infer that because Hopkins and Johnson were convicted drug users, their pursuit of drugs from Thomas would have been urgent and he would have sold drugs to Hopkins and Johnson if he had some to sell. This reasoning was consistent with Thomas's argument that the drugs did not belong to him.

"In general, matters of reasonable trial strategy and tactics will not amount to ineffective assistance of counsel."[32] Although trial counsel acknowledged that in hindsight, he may have objected to the admission of the prior convictions, "when one is considering matters of trial strategy and tactics, the effectiveness of trial counsel must not be judged by hindsight or the ultimate result of the trial."[33] Had we concluded that the failure to object constituted deficient performance, however, we still would not find that the trial court erred when it concluded that trial counsel was not ineffective because there was no harm. As we discussed in Division 3, even if the convictions were erroneously admitted, there was no harm as the

---

[31] (Citations and punctuation omitted.) *Freeman v. State*, 282 Ga. App. 185, 187 (2) (638 SE2d 358) (2006).

[32] (Citation omitted.) *Stanley v. State*, 283 Ga. 36, 41 (2) (c) (656 SE2d 806) (2008).

[33] (Citation omitted.) *Williams v. State*, 280 Ga. 539, 543 (2) (630 SE2d 410) (2006).

other evidence presented in the case supported the jury's verdict. As Thomas has not shown that a reasonable probability exists that the result of the trial would have been different but for trial counsel's failure to object to the admission of the witnesses' prior convictions, his ineffectiveness claim fails.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JUNE 4, 2008.

*Leon Larke*, for appellant.

*Steven Askew, District Attorney, Adriane L. Love, Assistant District Attorney*, for appellee.