695 S.E.2d 379 (2010)
PAGE
v.
The STATE.
No. A10A1009.
Court of Appeals of Georgia.
May 12, 2010.
*380 Lawrence J. Zimmerman, Christopher R. Geel, for appellant.
Patrick H. Head, Dist. Atty., Eleanor A. Odom, Amelia G. Pray, Asst. Dist. Attys., for appellee.
MIKELL, Judge.
Following a jury trial, Corey Page was convicted of molesting his 14-year-old daughter, J.J. The trial court sentenced Page to twenty years, with ten to be served in confinement and the balance on probation. Page appeals from the denial of his motion for a new trial, contending that he received ineffective assistance of counsel. We affirm.
Viewed in the light most favorable to the verdict, the evidence reveals that on April 9, 2006, while J.J. was spending spring break with Page's mother, Ventrice Page Thomas, Page came over and asked J.J. to spend the night at his house. She agreed. J.J. testified that when she returned to Page's apartment later that evening, Page began talking "really crazy about somebody at his job telling him that if he wanted to gain [J.J.'s] trust, to ask [her] to get in the tub with him." J.J. became scared and nervous, but decided "not to make a big deal of it" and get ready for bed. J.J. went into the bathroom but could not lock the door. She waited a few minutes to see if Page would come into the bathroom and when he did not, J.J. got into the shower. J.J. then heard the bathroom door open and observed Page enter the room. J.J. testified that she could see Page through the "see-through" shower curtain. He was naked and proceeded to get in the shower with J.J. Page picked up a bar of soap and began washing J.J.'s body, including her arms, breasts, back, and "butt" and then tried to get J.J. to wash his body. Page finally got out of the tub and left the bathroom. When J.J. got out a short time later, she discovered that Page had taken her towel and clothes into the bedroom. J.J. went to get her clothes and Page was in the bedroom, laughing. As J.J. was putting on her underwear, Page "grabbed [her] ankles saying, How would you like if I be your first? And he was talking about he wanted to see was [J.J.] really still a virgin." J.J. was able to fight Page off, and she spent the night in the living room. The following morning, Page apologized, saying he was drunk and did not *381 mean it. He asked J.J. not to say anything to anyone. Page took J.J. to her grandmother's house to get the rest of her clothes and then home to her mother. J.J. did not tell her mother what happened until June, when her mother became concerned because J.J. said she wanted to kill herself.
In his sole enumeration of error, Page contends that counsel performed deficiently by failing to object when the state placed Page's character in issue by attempting to elicit testimony about Page's violent propensities from his mother, Thomas, and from his former girlfriend, Jennifer Scott.
In order to prove his claim of ineffective assistance of counsel, [Page] must establish both prongs of the test set out in Strickland v. Washington:[1] (1) that his trial counsel's performance was deficient and (2) that counsel's inadequate performance so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.[2]
"A reasonable probability is a probability sufficient to undermine confidence in the outcome."[3] Failure to satisfy either prong of the two-part Strickland test is fatal to an ineffective assistance claim.[4] "[A] trial court's finding that a defendant has been afforded effective assistance of counsel will be affirmed on appeal unless clearly erroneous."[5] We conduct a de novo review of the lower court's legal conclusions.[6]
On direct examination, both Thomas and Scott disputed J.J.'s testimony, maintaining that there was "nothing peculiar about the door in the bathroom"; that the bathroom door locked; and that the shower curtain was blue and not "see-through." During cross-examination, the state asked Thomas if she recalled an incident in 1992, when she called police because Page caused her physical harm. Thomas could not remember. During the state's cross-examination of Scott, the following colloquy occurred:
Q: Do you remember back in March of 2001 having an altercation with the Defendant here where he caused you physical harm?
A: He didn't cause me physical harm.
Q: You were pregnant then, though, and he did something, made some sort of contact with you, hit you?
A: No.
Q: He didn't do that?
A: No.
Q: Did you ever report anything to the police?
A: Yes.
Q: Okay. What did you report to the police?
A: I reported that we got into it and all that.
Q: What are youI'm curious. What do you mean by got into it?
A: I was furious. I was pregnant, furious, just say, what, snapped. I found out he was seeing another woman.
Q: Mm-hmm.
A: And we got into [an] argument over the phone and I was, like, revenge. So basically I went and filed
Q: But weren't you with him in person when he caused you some physical harm?
A: No, ma'am.
Q: That was just the telephone call.
A: Yes.
Q: And you called the police based on the telephone
A: I did not call the police. I went to the sheriff office or the warrant office downtown.
Q: So you took out a warrant?
A: Yeah.
*382 Trial counsel did not object to the state's questions.
At the motion for new trial hearing, trial counsel testified that the state's cross-examination of Thomas was objectionable and acknowledged that he did not object. With regard to the cross-examination of Scott, trial counsel testified;
Well, at that particular time, the second incident, I realized that probably, if I was going to deal with the character thing, I should have done it the first time. So, I kind of let this one go not to draw attention to it the second time. And plus goinggoing through my head was, if the [s]tate was making a big deal about some supposed misdemeanors, it might not hurt him but may in fact help him. But I drew that conclusion, of course, at the second, after the second incident.... [Also,] this was a child molestation case and many times prosecutors try to pile it on them when they don't have a strong case. And that's what I was thinking after the second time.... [D]o I think I should object when the character evidence is going into by the [s]tate when it wasn't brought up by the defendant? Yes. However, if I could do thatin looking at the transcript, which I haven't seen or even discussed all of that for years, the first time the mother said she doesn't remember or he didn't do it or something to that effect. And just this time with the girlfriend, she says he didn't do all of that. So the question is, should I have objected to the character witness or the character testimony by the [s]tate? Yes. I probably should have. But then as it went on, it really didn't seem to hurt him any.
The general rule in a criminal case is that evidence of the general bad character of the defendant is inadmissible "unless and until the defendant shall have first put his character in issue."[7] Relying on Whatley v. State,[8]Mitchell v. State,[9] and Burrell v. State,[10] the state contends that trial counsel was not ineffective in failing to object to these inquiries because they were pursued for the relevant purpose of exploring the witnesses' bias or prejudice and whether or not they were afraid of or had reason to be intimidated by Page.
It is proper ..., in the cross-examination of a witness for the accused, to bring out the relationship existing between the witness and the accused, for the purpose of showing the bias or prejudice of the witness, or for the purpose of showing the probability that the witness is testifying in behalf of the accused by reason of duress or fear.[11]
In this case, however, the state did not lay a foundation for the witnesses' relationship with Page. The prosecutor did not ask any questions about the nature of the witnesses' relationship with Page and she did not ask whether they were afraid of or intimidated by him, or biased or prejudiced for any reason. As Page points out, "[t]he state's ... questions were not woven into a larger inquiry regarding the witnesses' relationship with the defendantthey were a non sequitur, neither preceded nor followed by any logically related questions." Accordingly, the state's justification for its questioning of the witnesses fails. This does not end our inquiry, however, because Page has not borne his burden of proving that trial counsel was ineffective.
The record shows that Page's trial counsel was an experienced criminal trial attorney. He had practiced criminal law as a defense attorney for over 30 years and had participated in numerous criminal trials, including child molestation cases. With regard to Scott's testimony, trial counsel testified that her denial of any physical violence did not seem to harm Page and that he made the decision to move on rather than object so as not to draw the jury's attention to the state's *383 questions.[12] "The decision of whether to interpose certain objections is a matter of trial strategy and tactics. Errors in judgment and tactical errors do not constitute denial of effective assistance of counsel."[13] Under the circumstances, counsel's decision not to object to Scott's testimony was reasonable.[14]
In any event, to sustain an ineffectiveness claim, both deficient performance and prejudice must be proved. Here, Page has not shown how he was harmed. He contends that the evidence invites the jury to conclude that he is a violent person with a pattern of victimizing women and members of his family and would be inclined to molest his own daughter. But, "harm cannot be shown by mere speculation and conjecture unsupported by the record."[15] While the questions implied that Page had acted out physically against the witnesses, both women denied any such physical violence, and Scott testified that she took out a warrant strictly as revenge for Page's unfaithfulness. Under the circumstances, we conclude that Page did not establish that there is a reasonable probability that any prejudice stemming from counsel's failure to object would have changed the outcome of this trial.[16] Consequently, the trial court's determination that Page was afforded effective assistance of counsel was not clearly erroneous.
Judgment affirmed.
SMITH, P.J., and ADAMS, J., concur.
NOTES
[1] 466 U.S. 668, 695-696(III)(B), 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[2] (Footnote omitted.) Thomas v. State, 291 Ga. App. 795, 804(6), 662 S.E.2d 849 (2008).
[3] Strickland, supra at 694(III)(B), 104 S.Ct. 2052. See also Miller v. State, 285 Ga. 285, 286, 676 S.E.2d 173 (2009).
[4] Thomas, supra.
[5] (Footnote omitted.) White v. State, 293 Ga. App. 241, 242(1), 666 S.E.2d 618 (2008).
[6] Robbins v. State, 290 Ga.App. 323, 329(4), 659 S.E.2d 628 (2008).
[7] (Citation and punctuation omitted.) Ledford v. State, 202 Ga.App. 694, 695(1), 415 S.E.2d 693 (1992).
[8] 165 Ga.App. 13, 299 S.E.2d 87 (1983).
[9] 207 Ga.App. 306, 427 S.E.2d 814 (1993).
[10] 293 Ga.App. 540, 667 S.E.2d 394 (2008).
[11] (Citation omitted.) Whatley, supra at 13(1), 299 S.E.2d 87. See also Burrell, supra at 541(1), 667 S.E.2d 394; Mitchell, supra at 306-307(1), 427 S.E.2d 814.
[12] See, e.g., Goldey v. State, 289 Ga.App. 198, 199-200(2)(a), 656 S.E.2d 549 (2008) ("[defense] counsel's decision not to object as part of a trial strategy of not magnifying the importance of certain testimony was not ineffective assistance") (footnote omitted).
[13] (Citations, punctuation and footnote omitted.) Abernathy v. State, 299 Ga.App. 897, 903(3)(a), 685 S.E.2d 734 (2009).
[14] See, e.g., Herieia v. State, 297 Ga.App. 872, 876-877(4), 678 S.E.2d 548 (2009); Page v. State, 287 Ga.App. 182, 183(1), 651 S.E.2d 131 (2007).
[15] (Punctuation and footnote omitted.) Foster v. State, 286 Ga.App. 250, 254(3)(a), 649 S.E.2d 322 (2007).
[16] Miller, supra.